William H. ADKINS, Plaintiff-Appellant,

v.

The DUVAL COUNTY SCHOOL BOARD et al., Defendants-Appellees.

Jeff Dolan WILLMON, Jr., Plaintiff-Appellant,

v.

NASSAU COUNTY SCHOOL BOARD, Defendant-Appellee.

Ruth B. WILSON, Plaintiff-Appellant,

v.

The DUVAL COUNTY SCHOOL BOARD, Defendant-Appellee.

No. 74–1653.

United States Court of Appeals, Fifth Circuit.

April 21, 1975.

William H. Maness, Jacksonville, Fla., for plaintiffs-appellants.

Richard H. Frank, Tampa, Fla., amicus curiae.

William L. Allen, Asst. Gen. Counsel, Daniel U. Livermore, Jr., Jacksonville, Fla., for Duval County School Bd., and others.

Brian T. Hayes, Tallahassee, Fla., for Nassau County School Bd.

Before TUTTLE, RONEY and GEE, Circuit Judges.

RONEY, Circuit Judge:

Three suits consolidated on appeal present this single issue: Is a Florida school board a "person" within the meaning of 42 U.S.C.A. § 1983, which provides:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. (Emphasis supplied)

Concluding on the authority of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), that a county school board is not a "person" within the meaning of that statute, the district court dismissed the cases for want of subject matter jurisdiction, the school boards being the sole defendants and no other ground of jurisdiction having been asserted. We affirm.

Plaintiffs' substantive claims for reinstatement, back pay and other relief, along lines frequently held by federal courts to be cognizable under 42 U.S.C.A. § 1983, see, e. g., Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), are not material to the disposition of this case. The procedural history is important, however, in that it has made the issue in this case clear and direct.

Wilson and Adkins filed separate suits under 42 U.S.C.A. § 1983 alleging causes of action against the Duval County School Board, the school superintendent and the principal of the school in which each had last taught. Jurisdiction was alleged only under 28 U.S.C.A. § 1343(3),[1] with no allegation of jurisdiction under the general federal question statute, 28 U.S.C.A. § 1331.[2] At a hearing on defendants' motion to dismiss, both plaintiffs requested and obtained a dismissal without prejudice of their claims against the individual defendants. The only defendant left in each suit is the Duval County School Board. Similarly, Willmon's original complaint al-

---

1. Jurisdiction to vindicate, in federal courts, civil rights violations such as those alleged here under § 1983 is provided by 28 U.S.C.A. § 1343, regardless of the amount in controversy. Subdivision (3) of § 1343 provides:

   To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

2. A primary procedural difference between jurisdiction 28 U.S.C.A. § 1343 and 28 U.S.C.A. § 1331 is the need for an amount in controversy in excess of $10,000 exclusive of interest and costs under the latter provision. Section 1331 provides, in pertinent part:

   The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States. . . .

leged a § 1983 claim against the Nassau County School Board alone, predicating jurisdiction solely under 28 U.S.C.A. § 1343(3).

All three cases thus achieved an identical posture relative to the jurisdictional question. The parties to the three suits stipulated that the district court could consolidate them for purposes of ruling on the defendants' motions to dismiss for want of subject matter jurisdiction in light of the Supreme Court of the United States' decision in *Kenosha.* A single order dismissed all three cases and entered judgment for the defendants.

The critical issue as to subject matter jurisdiction is whether a Florida school board falls within the ambit of the United States Supreme Court cases holding that certain other governmental entities were not intended by Congress to be "persons" against whom § 1983 actions could be brought.

In Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Supreme Court by unanimous decision held that a municipality is not a "person" within the statute and dismissed a § 1983 damage claim against the City of Chicago. Similarly, in Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), the Court held there to be no cause of action for damages under § 1983 against a California county.

Most lower courts, including ours, construed Monroe v. Pape to preclude damage actions against the governmental entities, but not equitable actions. *See, e. g.,* Harkless v. Sweeny Independent School District, 427 F.2d 319 (5th Cir. 1970), cert. denied, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971); *cf.* Moor v. County of Alameda, 411 U.S. at 695 n. 2, 93 S.Ct. 1785. By treating the award of back pay as an equitable remedy, such courts afforded a § 1983 cause of action through § 1343 jurisdiction to vindicate teachers' claims against school boards and school officials for Fourteenth Amendment violations that could not achieve the $10,000 stature required to give the courts federal question jurisdiction under § 1331. *See, e. g.,* Horton v. Lawrence County Board of Education, 449 F.2d 793, 795 (5th Cir. 1971); *Harkless, supra,* 427 F.2d at 324.

Then the Supreme Court disapproved this bifurcated approach to a § 1983 cause of action, holding that a municipality was not a "person" within the meaning of the statute regardless of the kind of relief sought against it. Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). The question which this Court had avoided in *Harkless* by application of the legal-equitable relief distinction once more became a viable issue: Is a school board a "person" amenable to any suit under § 1983? This Court remanded Campbell v. Mazur, 486 F.2d 554 (5th Cir. 1973), so that the district court could consider the effect of *Kenosha* on our decision in *Harkless.* We have recently decided that a Texas school district which, "under Texas law, is in the nature of a municipality" is not a "person" as that term is used in § 1983. Sterzing v. Fort Bend Independent School District, 496 F.2d 92, 93 n. 2 (5th Cir. 1974).

The appellants and *amicus* teachers' association have argued the significance of this issue because of the number of school desegregation cases in which the school board has been a defendant. The possible impact on "school decisions" of a holding that a school board is not a "person" under § 1983 is difficult to evaluate for a number of reasons. Many school cases involve Fourteenth Amendment claims for which jurisdiction exists under the federal question jurisdiction of the federal courts as provided in § 1331. Most school cases also named individual parties who are "persons" against whom effective relief was obtained, so that the presence or absence of the school board as a governmental entity did not materially affect the result. Many cases do not even discuss jurisdiction in granting or denying relief. In this case, however, the suit is solely against the school board, the cause of action is restricted to a claim under § 1983, and the jurisdiction is based solely on § 1343.

Two things should be noted to the argument concerning the far-reaching effect of the district court's decision. First, the issue is not whether the school board can be sued. Personal jurisdiction of the defendants is not questioned. We are confronted only with subject matter jurisdiction, *i. e.,* whether a cause of action against a school board recognizable in federal courts was created by § 1983. Second, our responsibility is not to decide whether Congress could or should establish such a cause of action, or whether a similar cause of action may exist under some other jurisprudence, but whether Congress in fact did direct a § 1983 cause of action against school boards. Unlike constitutional decisions, our determination here can be corrected by Congress itself if it desires another result.

We can find no controlling distinction between a Florida school board, as a governmental entity, and a Florida municipality or a Florida county, that would suggest that Congress would include one within the purview of the statute, and not the other two. All three find authority for their existence in the Florida Constitution. *See* F.S.A.Const. Art. VIII, §§ 1 and 2 and Art. IX, § 4. Counties, municipalities and school districts are granted the power in the Constitution to participate in establishing taxes and tax rates for their respective purposes, F.S.A.Const. Art. VII, § 9, which power is exercised by their respective governing bodies. *See* F.S.A. § 200.011. The legislature has provided each with significant governmental power with which to operate for its respective purposes. *See* F.S.A. § 125.001 et seq. (counties); F.S.A. § 165.01 et seq. (municipalities); F.S.A. § 230.01 et seq. (school districts).

In an exercise of legislative discretion the Florida legislature has chosen to designate the school board as a "body corporate" for all purposes, including institution and defense of suits involving official action. *See* F.S.A. § 230.21. It has similarly chosen to have the governing authority of a municipality or county generally operate in the name of the county or municipality, including suing and being sued as a "body corporate." *See* F.S.A. §§ 125.15, 165.08. Each of these governmental entities, a school district, a county and a municipality, can operate as an entity only through its designated governing authority, the school board, the county commissioners, and the city council. The fact that the Florida legislature has designated the governmental entity to be sued in its own name in two instances and in the name of the governing authority in the third does not change the character of the suit. The suit, however styled, is against the governmental subdivision itself in each case.

We have recently held that the various arms of state government, such as the Department of Highways, are not "persons" within the meaning of § 1983, *Cheramie v. Tucker,* 493 F.2d 586, 587–588 (5th Cir.), cert. denied, 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 107 (1974). That decision would seem to follow logically from *Monroe, Moor,* and *Kenosha.* All of those precedents dealt specifically with political subdivisions of a state, *i. e.,* municipalities and counties. If the subdivisions of a state were not "persons" under § 1983, the state itself was obviously not such a "person" and therefore, the entities through which the state functions should be excluded. An analysis of the approach taken by the Supreme Court in *Kenosha* and *Monroe,* and that Court's expression of what it views the legislative intent to have been when Congress passed the Civil Rights Act of 1871, seems to require the conclusion that § 1983 was similarly not directed at county school boards.

In *Monroe,* Justice Douglas discussed the legislative history of the bill which became the Civil Rights Act of 1871 in order to arrive at a construction of the word "person" in that statute consistent with Congressional intent. Justice Douglas noted particularly the defeat in the House of Representatives and the ultimate elimination of the Sherman Amendment which would have unequivo-

cally extended liability to any "county, city or parish" for the violation of certain civil rights. In both houses of Congress, the amendment met with strong opposition because of the potentially debilitating effect damage judgments might have on the governmental entity. *See Kenosha,* 412 U.S. at 517–520, 93 S.Ct. 2222 (Appendix to Douglas, J., dissenting in part).

The Sherman Amendment was adopted by the Senate, after which the House rejected it. The Conference Committee agreed on another version, but the House also rejected the Conference report. In a second conference the Sherman Amendment was dropped and the statute which is now 42 U.S.C.A. § 1986 was substituted. *See Monroe,* 365 U.S. at 188–191, 81 S.Ct. 473. That section, like § 1983, speaks only of liability of "persons," not cities or counties. Considering this background of adamant Congressional refusal to extend liability for civil rights violations to governmental entities when the issue was specifically before Congress, the Supreme Court refused to construe the general term "person" to include such entities. *See Kenosha,* 412 U.S. at 513, 93 S.Ct. 2222; *Monroe,* 365 U.S. at 191, 81 S.Ct. 473.

Although the Sherman Amendment would have created vicarious liability against the governmental entities, without fault, 365 U.S. at 188, n. 38, 81 S.Ct. 473, this ground of liability was not the sole reason for the amendment's defeat. The other general concerns which led Congress to reject the Sherman Amendment, particularly the fear of economic destruction of state government by damage awards, are no less important when the governmental entity is a school board than when it is a city. In fact, a school board, which might not be authorized to fill its own coffers, could have more difficulty in meeting damage claims and finding the funds necessary to provide adequate education. While not specifically addressing the issue as it did with cities and counties, Congress seemingly did not intend the term "person" when used in the Civil Rights Act

of 1871 to encompass a school board or other such governmental entity. While Congressional fear of the possible effect of damage recoveries against governmental entities was partially the basis for the construction of the term "person" by the Supreme Court, *Kenosha* made clear that the term, however defined, has no bifurcated meaning depending on the remedy sought by the plaintiffs. We conclude, therefore, that the district court correctly dismissed these actions for lack of jurisdiction under 28 U.S.C.A. § 1343(3), since the school boards were not "persons" subject to § 1983 suits.

Although there is no Supreme Court holding squarely in point, plaintiffs present an approach to the Court's decisions which they assert demonstrates that the Court has already decided that school boards are "persons" under § 1983. They first note that the Supreme Court raised the jurisdictional issue *sua sponte* in *Kenosha,* 412 U.S. at 511, 93 S.Ct. 2222, making it clear that the Court is ever vigilant to keep the federal courts within their Congressionally proscribed jurisdiction. The Supreme Court in at least three pre-*Kenosha* cases and two post-*Kenosha* cases has reached the merits of claims against school boards without raising the jurisdictional issue. See Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) (the pre-*Kenosha* cases); Cleveland Board of Education v. LaFleur and Cohen v. Chesterfield County School Board, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) (the consolidated post-*Kenosha* cases). Plaintiffs suggest that even though it is possible that the Court was not specifically attuned to the jurisdictional issue in *Perry, Roth* and *Tinker,* it is inconceivable that the Court could have overlooked it in *LaFleur* and *Cohen.* The latter two cases were argued on October 15, 1973, a mere

six months after the decision was rendered in *Kenosha* on April 18, 1973, and the composition of the Court was identical at both times. Additionally, the writer for the majority in *Kenosha*, Justice Rehnquist, authored a dissent on the merits in *LaFleur* without mentioning the possible lack of jurisdiction. All of this, plaintiffs contend, clearly shows that the Supreme Court has decided the issue adversely to the defendants in this case.

On the contrary, the existence of multiple parties in *LaFleur* and *Cohen* is sufficient to demonstrate that the Court has not ruled on the matter. An argument similar to plaintiffs' regarding municipalities instead of school boards apparently was made and rejected in *Monroe*. The Supreme Court had previously reached the merits of substantive claims in two cases in which municipalities were defendants, *see* Holmes v. City of Atlanta, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 776 (1955); Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943), but the Court in *Monroe* rejected the existence of any *sub silentio* ruling on the issue which it decided:

> In a few cases in which equitable relief has been sought, a municipality has been named, along with city officials, as defendants where violations of 42 U.S.C. § 1983 were alleged. See, e. g., Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324; Holmes v. City of Atlanta, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 776. The question dealt with in our opinion was not raised in those cases, either by the parties or by the Court. Since we hold that a municipal corporation is not a "person" within the meaning of § 1983, no inference to the contrary can any longer be drawn from those cases.

Monroe v. Pape, 365 U.S. at 191 n. 50, 81 S.Ct. at 486. Thus, the presence of parties other than the municipalities in *Holmes* and *Douglas* enabled the Court to reach the merits of the plaintiffs' claims despite the municipality-"person" issue. Likewise in each of the cases ar-

gued by plaintiffs here, the school board was only one of a number of defendants, various school officials having been joined as individuals or in their official capacities. For example, in *Cohen* the Superintendent of the Chesterfield County Schools was a party defendant. Cohen v. Chesterfield County School Board, 326 F.Supp. 1159 (E.D.Va.1971), rev'd, 474 F.2d 395 (4th Cir. 1973) (en banc), rev'd, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974). Similarly, LaFleur sued not only the Cleveland Board of Education as an entity, but also the members of the Board, the Superintendent, the Assistant Superintendent-Personnel, the Supervisor-Secondary Organizations and the Principal of the school from which she was discharged, each both individually and in his respective official capacity. Complaint at p. 1, LaFleur v. Cleveland Board of Education, 326 F.Supp. 1208 (N.D.Ohio 1971) (No. C71–292), rev'd, 465 F.2d 1184 (6th Cir. 1972), aff'd, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974).

The § 1983 issue was not presented by the parties in these cases. To raise it *sua sponte* would have been a futile exercise, since even had the Court raised the issue and decided that there was no § 1983 claim against the school board, there would have remained valid federal claims against some of the parties just as in the two pre-*Monroe* municipality cases, *Holmes* and *Douglas*. See *Monroe*, 365 U.S. at 187, 81 S.Ct. 473. The situation was the same in the post-*Monroe*, pre-*Kenosha* cases relied on by the plaintiffs, Perry v. Sindermann, *supra*, Board of Regents v. Roth, *supra*, and Tinker v. Des Moines Independent School District, *supra*. In none of those cases would a determination of the issue have resolved the conflict between the parties.

Conversely, once the Supreme Court concluded in *Kenosha* that no potential § 1983 claim was stated against the city upon which to base § 1343 jurisdiction, the federal court was without any jurisdiction to proceed to the merits. The Court discussed the possibility that on remand the *Kenosha* plaintiffs might be

able to prove some other basis for federal jurisdiction and thereby avoid dismissal of their complaints. *See Kenosha,* 412 U.S. at 514, 93 S.Ct. 2222. The absence of any practical effect in deciding it lacked jurisdiction over one defendant in a suit which also involved other defendants who were clearly "persons" under § 1983 and from whom full relief assumedly was obtained, as in *Cohen, LaFleur* and the other cases, when contrasted with the situation resulting from the jurisdictional decision in *Kenosha,* satisfactorily explains why the Supreme Court raised the issue *sua sponte* in the *Kenosha* case, and not in the others. *See* Mitchell v. West Feliciana Parish School Board, 507 F.2d 662 (5th Cir. 1975). We place no weight, therefore, on the failure of the Supreme Court to raise *sua sponte* the jurisdiction over one defendant in any case where other defendants were present for whom the suit would have had continuing vitality even without the putative "non-jurisdictional" party.

The plaintiffs in the instant cases chose not to seek jurisdiction over the school boards under the general federal question jurisdiction even though offered an opportunity to file amended complaints, so we need not consider the possibility of such jurisdiction. *Cf. Kenosha,* 412 U.S. at 514, 93 S.Ct. 2222; Ybarra v. Los Altos Hills, 503 F.2d 250, 253 (9th Cir. 1974). As already stated, in all of the cases before us none of the individual members of the three school boards and no officials of the boards were defendants when the cases were dismissed. Had there been individual party defendants, whom this Court has previously held to be "persons" for the purposes of 42 U.S.C.A. § 1983, the trial court could not, of course, have dismissed the suits for failure to allege a proper jurisdictional basis. Sterzing v. Fort Bend Independent School District, 496 F.2d 92, 93 n. 2 (5th Cir. 1974); *cf.* United Farm Workers of Florida Housing Project, Inc. v. City of Delray Beach, 493 F.2d 799, 802 (5th Cir. 1974).

Affirmed.