James E. SWILLEY, etc., Plaintiff,

v.

Dan C. ALEXANDER et al., Defendants.

Civ. A. No. 77–524–P.

United States District Court,
S. D. Alabama, S. D.

March 30, 1978.

Augusta E. Wilson, Mobile, Ala., for plaintiff.

Daniel A. Pike and Frank G. Taylor, Mobile, Ala., for defendants.

### ORDER ON DEFENDANTS' MOTION TO DISMISS

PITTMAN, Chief Judge.

This action was commenced pursuant to the First, Ninth, Tenth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983, and 1985.

Jurisdiction was invoked pursuant to 28 U.S.C. §§ 1331, 1332, and 1343.

The plaintiff, James E. Swilley, is a teacher within the Mobile County School System and President of the Mobile Federation of Teachers, AFL–CIO, Local 777. On July 27, 1977, the plaintiff, acting in his capacity as the President of aforesaid Union gave information to the Board of School Commissioners [hereinafter referred to as the Board] concerning the behavior and activities of a certain unnamed principal within the school system. The plaintiff was informed at the meeting that the Board

would investigate the matter and take proper action. The plaintiff was also instructed to withhold any further action on the matter until the Board had completed its investigation. The plaintiff, however, disseminated information to the news media which included allegations based upon information and belief that an unnamed principal had "caused children to go outdoors for tornado drills during lightning storms, returned small children to their homes without notifying their parents and committed other acts which contained a potential danger to students" all of which the plaintiff contends the public had a right to know.

On August 10, 1977, the plaintiff attended the Board meeting at which time he was publicly chastised by Board President, Dan C. Alexander, for furnishing the media with the nature of the charges that the Mobile Federation of Teachers had brought against the unnamed school principal. The plaintiff was reprimanded as a school employee and not as a Union official.

The plaintiff alleges that defendant Alexander exceeded his authority in ordering that a reprimand be sent to the plaintiff and placed on his personnel file without the concurrence by the remaining Board members and without any official Board action on the reprimand, all of which the plaintiff contends violated his right to due process of law.

On or about August 11, 1977, the plaintiff received the following letter, signed by defendant Lemuel Taylor, Assistant Superintendent, Division of Personnel:

"It has been brought to the attention of this office that on Wednesday, July 27, 1977, you gave certain information to the Board of School Commissioners in a closed session and were informed that the commissioners would investigate and take proper action. Also, you were requested to withhold any further action until the completion of the commissioners' investigation. Disregarding this request, you released the same information to the news media immediately thereafter, thereby hindering a complete and impartial investigation.

This action is considered highly unethical and unprofessional. This kind of action on your part could cast an aspersion on the entire public school system. Therefore, you are hereby reprimanded for your action in this matter. Any action by you of similar nature in the future will not be condoned." (Plaintiff's Exhibit A.)

The plaintiff contends that the acts of the defendants in issuing a reprimand, which were carried out under color of state law (Title 52 §§ 62, 69 and 74 Code of Alabama (Recomp.1958)), denied him rights, privileges and immunities under the United States Constitution. In particular his rights of freedom of association, and speech under the First Amendment and his right to due process under the Fifth and Fourteenth Amendments to the U. S. Constitution. The plaintiff also alleges that he was denied his rights under the Ninth and Tenth Amendments by the acts of the defendants.

## JURISDICTION

This court has jurisdiction to hear this cause of action under 42 U.S.C. § 1983 and its jurisdictional counterpart 28 U.S.C. § 1343(3). The court also has jurisdiction by virtue of 28 U.S.C. § 1331.

Section 1983 states in pertinent part: "Every person who, under color of any statute, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

42 U.S.C. § 1983.

■ "Person" as used in § 1983 does not include political subdivisions of the state such as municipal corporations, state administrative bodies, or cities. *Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36

L.Ed.2d 596 (1973); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Adkins v. Duval County School Board*, 511 F.2d 690 (5th Cir. 1975). The Fifth Circuit has held that in view of the approach taken by the Supreme Court in *Kenosha, Moor,* and *Monroe,* that § 1983 is not directed at county school boards. *Adkins v. Duval County School Board, supra; Sterzing v. Fort Bend Independent School District,* 496 F.2d 92, 93 (5th Cir. 1974). Although § 1983 does not confer jurisdiction over a school board as an entity, the individual board members do come within the jurisdictional grant of § 1983 and are therefore amenable to suit. *Adkins v. Duval County School Board, supra; Sterzing v. Fort Bend Independent School District, supra; United Farm Workers of Florida v. City of Delray,* 493 F.2d 799 (5th Cir. 1974). In the case *sub judice* no jurisdictional infirmity exists by virtue of § 1983 due to the named party defendants.

## CONSTITUTIONAL CLAIMS

The plaintiff has asserted a myriad of Constitutional challenges to the actions taken by the defendants. It is the opinion of this court that none of the alleged constitutional denials has any merit.

> "It is not the role of federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion . . . [Section] 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations. The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members, *and § 1983 was not intended to be a vehicle for federal court correction of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees.*" (Citations omitted).

*Wood v. Strickland,* 420 U.S. 308, 326, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) (Emphasis added).

The plaintiff alleges that he was deprived of his First Amendment rights of freedom of association and freedom of speech by the acts of the defendants. The plaintiff relies primarily on the Supreme Court case of *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) in establishing his First Amendment claim. The Court in *Pickering* held that in the absence of proof of "false statements knowingly or recklessly made, a teacher's exercise of his first amendment right to speak on issues of public importance may not furnish the basis for his dismissal from public employment." *Pickering, supra* at 391 U.S. at 574, 88 S.Ct. at 1738. *Pickering,* however, does not create blanket protection for any and all remarks made by teachers. As noted by the Court:

> "The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."

*Pickering, supra,* 391 U.S. at 568, 88 S.Ct. at 1734.

The letter in *Pickering* constituted essentially an attack on the School Board's handling of bond issue proposals and its subsequent allocation between educational and athletic programs. The Court recognized that in evaluating claims of first amendment violations and the need for orderly school administration that it was not feasible to articulate a standard by which all statements could be judged. The Court did, however, indicate some of the general lines along which an analysis of the controlling interest should be conducted. This court will evaluate the plaintiff's statements in the manner outlined by the Supreme Court in *Pickering.*

The statements in *Pickering* were directed solely to the school board's handling of fund allocation, and as the Court pointed out, "were in no way directed toward any person with whom the [plaintiff] would normally be in contact in the course of his daily work as a teacher." *Pickering, supra,* 391

U.S. at 569–70, 88 S.Ct. at 1735. This is not the situation in the case *sub judice.* Mr. Swilley's remarks, whether made in his capacity as a teacher or union official were directed at a principal within the Mobile County School System, who represents an individual with whom Mr. Swilley might come in contact with in the course of his employment. This distinction is essential for as pointed out by the Court the remarks in *Pickering* raised "no question of maintaining either discipline by immediate superiors or harmony among co-workers." *Pickering, supra,* 391 U.S. at 570, 88 S.Ct. at 1735. Mr. Swilley's remarks, on the other hand, went directly to the question of maintaining discipline and harmony among teachers and the administration. Mr. Swilley's remarks to the media about the unnamed principal made in either his capacity as a union official or a teacher could have substantially impaired the close working relationship between school employees and their superiors. The *Pickering* Court recognized that these are the types of working relationships for which it can be claimed that personal loyalty and confidence are necessary to their proper functioning. *Pickering, supra,* 391 U.S. at 570, 88 S.Ct. 1731. The Board in requesting that the plaintiff withhold further action pending a full investigation, was not attempting to silence the plaintiff, but was merely seeking to preserve those relationships and thereby insure the continued functioning of the school system.

Additionally, Mr. Swilley's statements to the press constituted far more than a difference of opinion between the Board and himself. The removal of a principal or disciplinary action against any school employee is not a matter resolved by popular vote as was the situation in *Pickering.* Disciplinary matters within the school system are the concern of the Board and when such problems are made public, prior to a full investigation, such action can be said to interfere with the orderly operation of the school system.

Finally, it must be noted that the plaintiff was not suspended or dismissed from his position as a teacher. Nor was the plaintiff's future employment made contingent upon his curtailment of his rights to free speech and association. The letter of reprimand instructed the plaintiff that such actions would not be *condoned* in the future. It presented no immediate or future threat of dismissal.

The Board by virtue of Alabama law had primary responsibility for the administration and supervision of the public schools in Mobile County. (Title 52 §§ 62 and 74, Code of Ala. (Recomp.1958)). The plaintiff's dual position as teacher and Union president conferred upon him in the eyes of the public a greater knowledge of the day-to-day operation of the schools, which in turn made his premature remarks to the media much more difficult to counter. As stated in the letter of reprimand, "This kind of action on your part could cast an aspersion on the entire public school system."

■ In view of the foregoing analysis, this court finds that the plaintiff's first amendment rights were not violated by the acts of the Board.

The plaintiff also alleges that the actions of the Board deprived him of property without due process of law under the Fifth and Fourteenth Amendments to the Constitution.

■ The Fourteenth Amendment forbids states from depriving any person of life, liberty or property without due process of the law. It also forbids arbitrary deprivations of liberty, such as where an individual's good name, reputation, honor or integrity are at stake because of actions by state officials.

■ Protected interests in property are created and defined by an independent source such as state statutes or rules which entitle a citizen to certain benefits. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The plaintiff alleged that his First Amendment rights were violated by the acts of the Board. The deprivation of rights guaranteed under the First Amendment would constitute a "property" interest sufficient to invoke due

process protection. This court has found, however, that the plaintiff's First Amendment rights were not violated by the acts of the defendants, and due process protection therefore does not attach. The plaintiff also contends that defendant Alexander's act of ordering the reprimand without concurrence or official action by the Board violated his right to due process. The plaintiff cites no rule or statute which requires such concurrence or official action and therefore has failed to establish a cognizable "property" interest sufficient to invoke constitutional due process protection.

> "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."

*Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709.

■ The plaintiff also alleges that he was denied liberty without due process of the law. A liberty interest arises when one is publicly subjected to a badge of infamy such as being labeled a drunkard. *See Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). The Fifth Circuit has held that liberty is not infringed by the mere presence of derogatory information in confidential files. *Ortwein v. Mackey,* 511 F.2d 696 (5th Cir. 1975); *Sims v. Fox,* 505 F.2d 857 (5th Cir. 1974) (en banc). Therefore, the fact that a copy of the letter of reprimand was placed in the plaintiff's personnel file does not raise a "liberty" interest. The facts of the present case indicate that defendant Alexander publicly chastised the plaintiff at the August 10, Board meeting and his remarks were carried on local radio and television stations. The mere fact that remarks about the plaintiff were publicly disseminated does not automatically create a "liberty" interest sufficient to invoke due process protection. The plaintiff must show that the state or one acting under color of state law has made a charge " 'that might seriously damage his standing and associations in his community' or that is of such a nature as to impose 'a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities.' " *Kaprelian v. Texas Women's University,* 509 F.2d 133, 137 (5th Cir. 1975), *citing Board of Regents v. Roth,* 408 U.S. at 573, 92 S.Ct. 2701. This court is of the opinion that the criticism of the plaintiff was not so serious as to violate any of those criteria. Public service casts one in the public eye. What public servants say and do are of public interest. Although criticism is seldom, if ever, pleasant, it is part of the price they pay for leadership or public interest roles. More often than not, criticism matures and helps. It is essential to the democratic process and functioning of any institution. This court finds that the plaintiff was not denied "liberty" without due process of law under the Fifth or Fourteenth Amendments.

■ The plaintiff's contention that he was denied equal protection under the law is without merit. The plaintiff has not alleged nor demonstrated dissimilar treatment of persons similarly situated and therefore there exist no bases for an equal protection challenge. The plaintiff's remaining constitutional arguments under the Ninth and Tenth Amendments are without merit and will not be addressed. Every disagreement between public employers and supervisors with employees does not rise to constitutional proportions. Some area for disagreement must be left to resolution between the parties. This is such a case. This "ain't no federal case."

This court, having found that the acts of the defendants do not constitute a violation of 42 U.S.C. § 1983, will not address itself to the plaintiff's claim under 42 U.S.C. § 1985.

It is hereby ORDERED, ADJUDGED, and DECREED that the defendants' motion to dismiss is due to be, and hereby is, GRANTED.

The plaintiff is taxed with the costs.