**Raymond MUZQUIZ et al.,
Plaintiffs-Appellants,**

v.

**CITY OF SAN ANTONIO et al.,
Defendants-Appellees.**

No. 74–3177.

United States Court of Appeals,
Fifth Circuit.

Oct. 8, 1975.

Rehearing En Banc Granted Dec. 9, 1975.
See 524 F.2d 1233.

Kermitt L. Waters, Las Vegas, Nev., for plaintiffs-appellants.

Harvey L. Hardy, San Antonio, Tex., for defendants-appellees.

Edgar A. Pfeil, Asst. City Atty., San Antonio, Tex., for City of San Antonio.

Before TUTTLE, GODBOLD and MORGAN, Circuit Judges:

TUTTLE, Circuit Judge:

Plaintiffs are former San Antonio policemen and firemen who challenge the operation of the city's Firemen's and Policemen's Pension Fund. The remaining defendants are the Pension Fund Board of Trustees and its members as individual party defendants. Pursuant to Article 6243f of Vernon's Texas Civil Statutes the city of San Antonio maintains a pension fund to which all policemen and firemen are obliged to contribute a portion of their salaries. The pension fund provides death and disability benefits for officers injured in the line of duty, and provides retirement benefits. Should an officer leave public employment before he is eligible for any of these benefits, however, the Act specifically provides:

> "[N]o member of either of said Departments or of said Fund shall ever be entitled to any refund from said Fund on account of the money deducted from that amount of their pay . . . which money is in itself declared to be public money, and the property of said Fund for the benefit of the members qualifying for benefits, and their beneficiaries."

Article 6243f, § 19. The plaintiffs filed this class action seeking a refund of the

amounts they contributed while they were serving as policemen or firemen in San Antonio.[1]

The district court granted defendants' motion for summary judgment, holding that the no-refund provisions of Article 6243f were constitutional. The plaintiffs appeal.

## I. JURISDICTION

The plaintiffs primarily assert jurisdiction under 42 U.S.C. § 1983, and its jurisdictional counterpart 28 U.S.C. § 1343.[2] Section 1983 provides:

"Every person who, under color of any statute . . . of any State, . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceedings for redress."

The Supreme Court has held that the term "person" as it is used in § 1983 does not include municipal corporations, *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). Relying on *Kenosha* the district court dismissed the City of San Antonio as a party, but found that jurisdiction would lie against the Pension Fund and its individual board members.

Although the issue is not raised by the briefs of either party, the correctness of the trial court's determination that the Pension Fund Board of Trustees and its individual members are subject to suit under 42 U.S.C. § 1983, was raised by the parties at oral argument. In any event, since the question touches on the court's jurisdiction, we consider that it should be disposed of.

The Pension Fund Board of Trustees and the named individuals comprising the Board contend, in a word, that they are immune from suit under § 1983 because they are not "persons", since they are performing governmental functions and that the reasoning by which the Supreme Court in *Monroe, supra,* arrived at the decision that the term "every person" in § 1983 did not comprehend a city, and, later, in *Moor v. County of Alameda,* did not comprehend a county, requires that actual designated persons acting as trustees of a governmental agency also be held not to be comprehended within the word "person" in this statute.

Neither the Supreme Court nor this Court has thus far limited the scope of § 1983. The most comprehensive discussion of the extension of the *Monroe* and later *Kenosha* principle in this Circuit is in *Adkins v. Duval County School Board,* 511 F.2d 690 (5th Cir., 1975). In that case a plaintiff sued Duval County School Board in its corporate capacity. The opinion stated, as to the issue relevant to the question now before us:

"Two things should be noted to the argument concerning the far-reaching effect of the district court's decision. First, the issue is not whether the school board can be sued. Personal jurisdiction of the defendants is not questioned. We are confronted only with subject matter jurisdiction, *i. e.,* whether a cause of action against a school board recognizable in federal courts was created by § 1983. Second, our responsibility is not to decide whether Congress could or should establish such a cause of action, or whether a similar cause of action may

---

1. This suit was originally filed as a class action purporting to represent a class of all former policemen and firemen of Houston, Dallas, El Paso and San Antonio; the action was severed into four separate class actions. *Walker v. City of Houston,* 341 F.Supp. 1124 (S.D.Tex. 1971) and each action was held to be properly considered by a single district judge. 341 F.Supp. 1117 (S.D.Tex.1971).

2. The plaintiffs also asserted jurisdiction under 28 U.S.C. § 1331. The Stipulations of the parties make it clear, however, that no class member's claim amounts to the $10,000 needed under § 1331.

exist under some other jurisprudence, but whether Congress in fact did direct a § 1983 cause of action against school boards. Unlike constitutional decisions, our determination here can be corrected by Congress itself if it desires another result.

We can find no controlling distinction between a Florida school board, as a governmental entity, and a Florida municipality or a Florida county, that would suggest that Congress would include one within the purview of the statute, and not the other two. All three find authority for their existence in the Florida Constitution. *See* F.S. A.Const. Art. VIII, §§ 1 and 2 and Art. IX, § 4. Counties, municipalities and school districts are granted the power in the Constitution to participate in establishing taxes and tax rates for their respective purposes, F.S.A.Const. Art. VII, § 9, which power is exercised by their respective governing bodies. *See* F.S.A. § 200.011. The legislature has provided each with significant governmental power with which to operate for its respective purposes. *See* F.S.A. § 125.001 *et seq.* (counties); F.S.A. § 165.01 *et seq.* (municipalities); F.S.A. § 230.01 *et seq.* (school districts).

In an exercise of legislative discretion the Florida legislature has chosen to designate the school board as a 'body corporate' for all purposes, including institution and defense of suits involving official action. *See* F.S.A. § 230.21. It has similarly chosen to have the governing authority of a municipality or county generally operate in the name of the county or municipality, including suing and being sued as a 'body corporate'. *See* F.S.A. §§ 125.15, 165.08. Each of these governmental entities, a school district, a county and a municipality, can operate as an entity only through its designated governing authority, the school board, the county commissioners, and the city council. The fact that the Florida legislature has designated the governmental entity to be sued in its own name in two instances and in the name of the governing authority in the third does not change the character of the suit. The suit, however styled, is against the governmental subdivision itself in each case.

We have recently held that the various arms of state government, such as the Department of Highways, are not 'persons' within the meaning of § 1983, *Cheramie v. Tucker,* 493 F.2d 586, 587–588 (5th Cir.), *cert. denied,* 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 107 (1974). That decision would seem to follow logically from *Monroe, Moor,* and *Kenosha.* All of those precedents dealt specifically with political subdivisions of a state, *i. e.,* municipalities and counties. If the subdivisions of a state were not 'persons' under § 1983, the state itself was obviously not such a 'person' and therefore, the entities through which the state functions should be excluded. An analysis of the approach taken by the Supreme Court in *Kenosha* and *Monroe,* and that Court's expression of what it views the legislative intent to have been when Congress passed the Civil Rights Act of 1871, seems to require the conclusion that § 1983 was similarly not directed at county school boards."

In the *Adkins* case, the opinion also said: "We have recently decided that a Texas school district which 'under Texas law, is in *the nature of a municipality'* (emphasis added) is not a 'person' as that term is used in § 1983. *Sterzing v. Fort Bend Independent School District,* 496 F.2d 92, 93 n.2 (5th Cir. 1974)".

■ It is, thus, apparent that our inquiry here is whether the San Antonio Police and Firemen's Pension Fund Board of Trustees has such duties, powers, and purposes as would make it of "the nature of a municipality". If so, then the Board of Trustees cannot be sued under § 1983. If not, then it can.[3]

---

3. We are here dealing, of course, with the Board of Trustees itself, and not with the individuals who are also named in their individual capacities, with respect to which question we deal later in the opinion.

██ While the determination whether the Police and Firemen's Pension Fund Board of Trustees is a "person" within the meaning of § 1983, is a question of federal law, *See Monroe v. Pape, supra,* 365 U.S. at 187–192, 81 S.Ct. 473, the Court must look to the state law to determine the powers and duties and purpose of the entity created. The purposes of this fund are set out above. The City of San Antonio, pursuant to Art. 6243f of Vernon's Civil Statutes maintains a pension fund to which all policemen and firemen are obliged to contribute a portion of their salaries. The named defendants are the trustees of this fund. The Board possesses none of the broad governmental powers which we held to be controlling in *Adkins v. Duval County School Board.* It is not responsible for any broad governmental function, thereby serving the public interest. As statutory trustees, the Board members are responsible only to the beneficiaries of the trust. In sum, while § 21 of Art. 6243f provides that the City of San Antonio is obliged to pay any deficiencies between the money procured under the Act and benefits paid, nonetheless, the Board of Trustees functions as a group of statutory trustees rather than as a governmental body; it partakes of no uniquely governmental responsibilities: it only administers the trust fund. Although not binding on this Court, we think the decision of the Texas Court of Civil Appeals in *Bolen v. Board of Firemen, Policemen & Fire Alarm Operators' Trustees of San Antonio, Texas,* 308 S.W.2d 904, 905, most clearly states the nature of this Board:

"The Board is not the State, nor is it a county, a city, a town or any other political corporation or subdivision of the State. The Board is simply a group of statutory trustees charged with the management of the Pension Funds of the Firemen, Policemen and Fire Alarm Operators of the City of San Antonio."

The Court further said in the Bolen case:

"The Board just simply is not a political corporation nor a political subdivision of the State. It does not have any of the attributes of a political subdivision. A political subdivision contemplates: geographical area and boundaries, public elections, public officials, taxing power and a general public purpose or benefit. The board has none of these attributes . . ."

What seems to be the view of the Texas Court is that pension funds serve an essentially private function. They differ from independent pension funds as set up by other employers or labor unions only in that the beneficiaries are public employees. Such funds could just as well have been set up with the city and employees contributing to a bank or insurance company as trustee, and in that case the identical function would be performed without utilizing public officials as trustees. With this analysis we agree, and conclude that this Board of Trustees is not "like a municipality" and is thus not immune from suit as a "person" under § 1983.

██ Further, we believe the individual members of the Board are subject to suit under § 1983. There can be no serious question but that they are "persons"; the word has never been suggested to have some arcane meaning whereby some human beings would be "persons" but others would not. Nothing in either *Monroe v. Pape* or *Bruno v. City of Kenosha* suggests that some special meaning should be applied to the term as it is used in § 1983. Indeed, in both *Monroe v. Pape* and *Bruno v. City of Kenosha* the Supreme Court carefully noted that the jurisdictional immunity enjoyed by the two municipalities in the cases was not shared by the individual party defendants.

In *Monroe v. Pape* the Supreme Court reversed a decision of the Court of Appeals for the Seventh Circuit which had dismissed an action for *damages* against police officers of the City of Chicago. In affirming the dismissal against the city

upon the now well-known grounds that the word "person" in § 1983 was to be construed as not including a municipality, the Court said: "Accordingly we hold that the motion to dismiss the complaint against the City of Chicago was properly granted. But since the complaint should not have been dismissed against the officials the judgment must be and is reversed." In *Bruno v. City of Kenosha,* a case in which the suit had been filed only against the two cities of Kenosha and Racine, Wisconsin, *seeking an injunction,* the Supreme Court noted that the Attorney General of the state had intervened as a defendant and remanded the case with respect both to that posture of the case and for further consideration in light of the allegations of the complaint that the suit was based on federal question jurisidiction as well as on § 1983. It was thus clear that the Court was recognizing the right of the plaintiff to maintain his action against the attorney general under § 1983 and against the two cities involved if he established the jurisdictional amount required for federal question jurisdiction under § 1331.

█ This Court has specifically held that § 1983 actions can proceed against individual party defendants, despite the fact that the ultimate judgment would "surely be felt by the City." *United Farmworkers of Florida Housing Project, Inc. v. City of Del Ray Beach, Florida,* 493 F.2d 799, 802 (5th Cir. 1974); *Sterzing v. Fort Bend Independent School District,* 496 F.2d 92, 93, n.2 (5th Cir. 1972). In *Adkins v. Duval County School Board,* a case seeking reinstatement, back pay and other relief, we stated:

> "In all of the cases before us none of the individual members of the three school boards and no officials of the boards were defendants when the cases were dismissed. Had there been individual party defendants, whom this Court has previously held to be 'persons' for the purposes of 42 U.S.C. § 1983, the trial court could not, of course, have dismissed the suits for

failure to allege a proper jurisdictional basis."

511 F.2d at 696. We agree with the court in *Harper v. Kloster,* 486 F.2d 1134, 1138 (4th Cir. 1973) when it stated:

> "In *Monroe,* nevertheless, the Court held that § 1983 applied to municipal officers and employees when damages were sought. . . . We see no reason to give *Kenosha* any wider application."

In our view, the fact that both *Sterzing* and *United Farmworkers of Florida Housing Project, supra,* involved claims principally for injunctive relief is an irrelevant distinction. In *City of Kenosha* the Supreme Court specifically rejected the idea that the nature of the relief sought can affect jurisdiction.

> "We find nothing in the legislative history discussed in *Monroe,* or in the language actually used by Congress, to suggest that the generic word 'person' in § 1983 was intended to have a bifurcated application on municipal corporations depending on the nature of the relief sought against them."

412 U.S. at 513, 93 S.Ct. at 2226. In our view, this forecloses the argument that our earlier cases can be limited solely to cases where injunctive relief is sought against municipal city officers.

The argument that the Supreme Court's construction of the word "person" in § 1983 has created a bulwark against any action which might result in making inroads on a city's financial structure is completely answered, it seems to us, by the fact the Court seemed not the least concerned about whether substantial damages against the police officers of the City of Chicago would be paid only out of the pockets of the individual officers or out of appropriations made by the city government, or by their insurers. Moreover, nothing could more clearly demonstrate the fact that the Supreme Court intended merely to construe the language of § 1983 as not comprehending a municipality rather than granting any sort of blanket immunity to a city or a county by its *Monroe*

decision, than the Court's treatment of the parties in *Moor v. County of Alameda, supra.* In that case the Court held that the County of Alameda was like a municipality and thus not comprehended within § 1983, and that the plaintiff could not sue it under that section; however, in the same opinion, the Court held that the plaintiff, being a non-resident of the State of California, adequately alleged diversity jurisdiction and that the County of Alameda was a *citizen* of the State of California for diversity purposes, and could be sued.

Some confusion seems to have arisen in courts which have not been frequently concerned with interpretation of the Civil Rights Acts to the extent that they seem to have assumed that since the Supreme Court—in *Monroe*—held that a city could not be sued under § 1983, it could not be sued at all in a federal district court. *Moor v. County of Alameda* clearly puts that matter to rest. Moreover, a clear answer to those who contend that *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) gives instruction to the effect that the *Monroe* holding should be expanded to cover municipalities and other governmental entities on some theory of sovereign immunity or protection under the Eleventh Amendment, is some of the language in *Edelman,* itself. In footnote 12 on page 667, 94 S.Ct. on page 1358, the Court said:

" . . . As may be seen from *Griffin's* [*Griffin v. School Bd.,* 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256] citation of *Lincoln County v. Luning,* 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766 (1890), a county does not occupy the same position as a State for purposes of the Eleventh Amendment. *See also Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). The fact that the county policies executed by the county officials in *Griffin* were subject to the commands of the Fourteenth Amendment, but the county was not able to invoke the protection of the Eleventh Amendment, is no more than a recognition of the long-established rule that while county action is generally state action for purposes of the Fourteenth Amendment, a county defendant is not necessarily a state defendant for purposes of the Eleventh Amendment."

In *Lincoln County v. Luning, supra,* the case referred to in the footnote quoted above, the Supreme Court said:

"With regard to the first objection, it may be observed that the records of this court for the last 30 years are full of suits against counties; and it would seem as though by general consent the jurisdiction of the federal courts in such suits has become established. But irrespective of this general acquiescence, the jurisdiction of the circuit courts is beyond question. The Eleventh Amendment limits the jurisdiction only as to suits against a state. It was said by Chief Justice Marshall, in *Osborn v. [The] Bank [of the United States],* 9 Wheat. 738, 857 [6 L.Ed. 204] that 'the eleventh amendment, which restrains the jurisdiction granted by the constitution over suits against states, is of necessity limited to those suits in which the state is a party on the record.' While that statement was held by this Court in the case of *In Re Ayers,* 123 U.S. 443, 8 S.Ct. 164, [31 L.Ed. 216], to be too narrow, yet by that decision the jurisdiction was limited only in respect to those cases in which the state is a real, if not a nominal, defendant; and while the county is territorially a part of the state, yet politically it is also a corporation created by and with such powers as are given to it by the state. In this respect it is a part of the state only in that remote sense in which any city, town, or other municipal corporation may be said to be a part of the state. *Metropolitan Railroad Company v. District of Columbia,* 132 U.S. 1, 10 S.Ct. 19, 33 L.Ed. 231."

■ The other case cited by Mr. Justice Rehnquist, writing for the Supreme Court in the above footnote, *Moor v. County of Alameda,* has already been commented on above. It would seem

clear, therefore, that none of the considerations of sovereign immunity or Eleventh Amendment immunity from suit should be imported into a court's consideration as to whether this one section of the civil rights acts is to be construed as permitting or denying a plaintiff to sue a particular minor governmental agency or official.

## II. CONSTITUTIONAL CLAIMS

The plaintiffs raise a myriad of constitutional challenges to the no-refund provisions of Art. 6243f V.T.C.S. In our view, none of them has merit, and we accordingly affirm the district court's grant of summary judgment.

The plaintiffs claim first that the refusal of the Pension Fund Board to refund their contributions constitutes a taking of their property without compensation, in violation of the Fourteenth Amendment. While earlier cases have termed the benefits due from such a governmental pension fund a "bounty" or a "privilege," and accordingly refused to order payment on the grounds the sovereign could withhold its gratuities at will,[4] we do not rely on this distinction between privileges and vested rights. Rather, in our view, there was no "taking" which would require compensation. While the plaintiffs contributed to the Pension Fund, they in turn received protection in the event of death or disability far in excess of their contributions. This protection continued so long as they remained employed as firemen or policemen. They thus enjoyed the benefits of their contributions during their term of employment, and no other compensation is due them.

Similarly their argument that they are entitled to notice and hearing before they can be deprived of property fails.

The plaintiffs also argue that they were denied equal protection inasmuch as other civil servants in San Antonio were not obliged to participate in the same pension program, and further that police and firemen in small Texas cities are not similarly affected by Art. 6243f. While it is true that the plaintiffs were treated differently from certain other public employees, it does not seem to us that this difference in treatment was in any way irrational or a violation of equal protection. Certainly as a class, policemen and firemen in San Antonio cannot be considered as a "suspect class," thus requiring strict scrutiny of the legislative purposes for the difference in treatment.[5] Nor could the interest the plaintiffs assert in their contributions to the Pension Fund be though of as some fundamental personal right.[6] Absent a suspect classification, or an infringement on some fundamental right, a classification is deemed permissible if it is found to have a "reasonable relationship" to a legitimate governmental interest.

"State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts may be conceived to justify it."

*McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

San Antonio policemen and firemen participate in a different pen-

---

4. See, e. g., *Pennie v. Reis,* 132 U.S. 464, 10 S.Ct. 149, 33 L.Ed. 426 (1889); *In Re Goodwin,* 57 F.2d 31 (6th Cir. 1932); *MacLeod v. Fernandez,* 101 F.2d 20 (1st Cir. 1938); *Morgan v. United States,* 115 F.2d 426 (5th Cir. 1941); *Rafferty v. United States,* 210 F.2d 934 (3d Cir. 1954); *Anderson v. United States,* 205 F.2d 326 (9th Cir. 1953); *Stouper v. Jones,* 109 U.S. App.D.C. 106, 284 F.2d 240 (1960).

5. The district court properly dismissed such an argument as "absurd." *See generally* Devel-

opments in the Law—Equal Protection, 82 Harv.L.Rev. 1065, 1124–27 (1969).

6. Among such fundamental rights are: voting, *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); travel, *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); privacy, *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); and, of course, speech, *Mills v. Alabama,* 384 U.S. 214, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966).

sion program than other city employees; they are eligible for substantially greater benefits in the event of death or disability. Other city employees contribute less of their salary, are eligible for refunds, participate in Social Security, and enjoy far fewer benefits. Given the nature of the work of policemen and firemen, this difference in treatment seems eminently reasonable. The Texas Supreme Court has previously construed the pension provisions of 6243f, finding the special treatment of firemen and policemen to be based on the hazardous quality of their work. *Firemen's and Policemen's Civil Service Commission v. Wells,* 157 Tex. 644, 306 S.W.2d 895, 897 (1957). We find the state supreme court's construction of the legislative purpose for the statute convincing.

Similarly the difference in treatment between the policemen and firemen in larger cities from those in smaller cities [7] can be justified on the basis of the legislature's perception of the differing hazards of the work.

Policemen and firemen in larger cities contribute a more substantial portion of their earnings, and are eligible for far greater benefits. The defendants reasonably argue that the no-refund provisions enable the state to maintain the level of benefits, thereby attracting and retaining qualified officers. While the plaintiffs appear to have conceded the fiscal rationality of the pension statutory scheme, they argue *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) held that a state's protection of its fiscal affairs cannot be used to justify such a statute. The district court properly found *Dandridge* inapplicable, as it involved fundamental rights with the resultant requirement that a state demonstrate a compelling interest in its statutory scheme.[8]

Finally the plaintiffs argue the no-refund provisions of Art. 6243f affected their constitutionally guaranteed right to travel and also constitute a bill of attainder. Neither argument has any substance. Certainly the plaintiffs were not denied refunds because they wished to travel: they lost their contributions because they resigned their public employment. A bill of attainder is a legislative act inflicting a penalty without a judicial trial. *Cummings v. State of Missouri,* 4 Wall. 277, 18 L.Ed. 356 (1866). No penalty was exacted here, for as we have found the plaintiffs were not deprived of property to which they have a claim.

In sum, the plaintiffs entered into public employment which had as one of its conditions mandatory contributions to the San Antonio Police and Firemen's Pension Fund; Art. 6243f became by its terms an element of their contracts of employment. The no-refund provisions of Art. 6243f are reasonable and, in our view, constitutional.

Affirmed.

GODBOLD, Circuit Judge (dissenting in part).

I do not agree that this § 1983 suit can be maintained against the Board of Trustees of the Pension Fund, that is, the Board as an entity or agency. Nor do I agree that there is jurisdiction under § 1983 against the individual members of the Board for any relief other than declaratory and injunctive. I would hold that the only federal jurisdiction is over the individual Trustees of the Pension Fund and then only for purposes of injunctive and declaratory re-

---

7. Art. 6243j does not contain the same no-refund provisions, but applies to cities of population between 150,000 and 400,000.

8. The plaintiffs also contend that the district court improperly closed discovery before defendants answered their interrogatories as to the purpose for the no-refund provisions. The legislative intent behind a statute is determined from the language of the Act as well as its legislative history. The plaintiff's interrogatory as to legislative purpose called for a legal not a factual conclusion. At the time the district court ruled on the defendants' motion for summary judgment and the plaintiffs' cross-motion for partial summary judgment on liability, no material issue of fact remained disputed.

lief. In the exercise of that jurisdiction I would direct the entry of a judgment (against only the individual members) declaring that plaintiffs are not entitled to relief and holding that their prayer for an injunction was properly denied. To that extent, and no more, I agree with Judge Tuttle's opinion on the merits.

In the beginning, it is necessary to correctly identify who the defendants are and what the relief is that is asked. The defendants named in the caption of the complaint are the City of San Antonio, the Board of Trustees of the Pension Fund, and "the members of said Board, individually and in their capacity as members of said Board."[1] The District Court dismissed the action against the city. In the body of the complaint the plaintiffs refer at times to the Pension Fund as a defendant. This ambiguity makes no substantive difference since for purposes of this case the collective Board of Trustees of the Fund and the Fund itself are the same arm or agency of the city.[2]

Judge Tuttle describes this case as an "action seeking a refund" of amounts contributed to the Pension Fund. I have to say, with deference, that this is an incorrect description. The complaint itself shows the suit to be much more than that. Plaintiffs claimed to be entitled to at least the following:

(1) A declaration that the Texas statute, Article 6243f, is unconstitutional (A. 61, 74).

(2) An injunction against the enforcement of that statute (A. 61, 74).

(3) "An accounting, restitution, damages, both general and special, and/or just compensation for the taking of Class Plaintiffs' private property for public use." (A. 61; see also A. 72–75).

(4) "Damages and/or refunds against the above-styled Pension Fund and/or the City of San Antonio, which is the alter ego of said Pension Fund." (A. 62).

(5) The imposition of a constructive trust "on the amount of money in the defendant FIREMEN AND POLICEMEN's PENSION FUND OF SAN ANTONIO, which belongs to Plaintiffs and Class Plaintiffs, equal to the present value of all the money withheld by the Defendants." (A. 69; see also A. 73).

(6) In Section XVI of the complaint, entitled "Restitution," (at A. 70), these forms of relief were requested:

Plaintiffs request this Court for a mandatory injunction compelling the Defendants to give an accounting of all the Plaintiffs' and Class Plaintiffs' contributions and to refund the amount or present value of said contributions plus the value of the money earned by the Defendants on said funds and/or alternatively a reasonable rate of interest, and/or for just compensation to Plaintiffs for the unconstitutional taking, plus attorney's fees and costs.

(7) Elsewhere plaintiffs request "a single liquid fund judgment" for amounts contributed, money wrongfully earned thereon, costs and attorney fees and any other relief legal or equitable that the court deems just (A. 70).

(8) And elsewhere plaintiffs ask for a judgment justly compensating them for "special damage or injury" under each one of their five alleged causes of action. The alleged "special damages" include "just compensation for taking of Plaintiffs' and Class Plaintiffs' private property for public use," and also such sums at the present value of money as will justly compensate plaintiffs and make them whole, considering that some contributions were made in the 1930's and 1940's in "100 cent dollars" and are now to be repaid in "19 cent dollars," and to include the value or amounts of money earned by defendants on contributions (A. 72–75).

First, as to jurisdiction over the Board of Trustees of the Pension Fund—the governmental entity. *Monroe v. Pape*,

---

1. Seven persons are named as serving in this capacity plus John Does as well.

2. However, as discussed below, this ambiguity helps to lay bare the erroneous theory that this is a mere suit against individuals.

365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), specifically dealt with the immunity of municipalities, the City of Chicago and the City of Kenosha. Similarly a municipality was involved in *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), where the Supreme Court held that counties were protected by the same immunity. The rationale underlying the grant of immunity, however, has been held to extend to a wide variety of governmental entities. The Circuit Courts have indicated that the immunity extends to states,[3] agencies and departments of the state,[4] agencies of counties,[5] agencies and departments of cities[6] and various other governmental entities.[7] In determining whether the Board of Trustees of the Pension Fund falls within the *Mon-*

*roe-Kenosha* exception, Judge Tuttle essentially ignores this developed area of federal law. He centers upon the phrase "in the nature of a municipality" used in *Sterzing v. Fort Bend Independent School District,* 496 F.2d 92 (CA5, 1974), with respect to a Texas school district. That phrase is, of course, not a means of analysis but a statement of a conclusion. To reach a decision in this case that the Board of Trustees of the Pension Fund is not "in the nature of a municipality" the majority opinion points out that the Board lacks broad governmental powers and functions. This is not enough. It is true that if a governmental entity, such as a state or city, possesses broad governmental powers and functions it falls within the *Monroe-Kenosha* municipal corporation exemption. But such characteristics, though *sufficient* to bring an entity within *Monroe-Kenosha,* are not

---

**3.** *See, e. g., Cheramie v. Tucker,* 493 F.2d 586 (CA5), *cert. denied,* 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 107 (1974); *U. S. ex rel. Gittlemacker v. County of Philadelphia,* 413 F.2d 84 (CA3, 1969), *cert. denied,* 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691 (1970); *U. S. ex rel. Lee v. Illinois,* 343 F.2d 120 (CA7, 1965); *Williford v. California,* 352 F.2d 474 (CA9, 1965).

**4.** *See, e. g., Cheramie v. Tucker,* 493 F.2d 586 (CA5), *cert. denied,* 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 107 (1974) (state department of highways); *United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach, Fla.,* 493 F.2d 799 (CA5, 1974) (state department of pollution control); *Sykes v. California,* 497 F.2d 197 (CA9, 1974) (state department of motor vehicles); *Burris v. State Dept. of Public Welfare of So. Carolina,* 491 F.2d 762 (CA4, 1974) (state department of public welfare); *Curtis v. Everette,* 489 F.2d 516 (CA3, 1973), *cert. denied,* 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974) (state bureau of corrections); *Coopersmith v. Supreme Court, State of Colorado,* 465 F.2d 993 (CA10, 1972) (state supreme court, court of appeals, district court, state bar association); *Avins v. Mangum,* 450 F.2d 932 (CA2, 1971) (state university); *Zuckerman v. Appellate Division, Second Department, Supreme Court of State of New York,* 421 F.2d 625 (CA2, 1970) (New York Appellate Division); *Rosado v. Wyman,* 414 F.2d 170 (CA2, 1969), *rev'd on other gnds.,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970) (state department of social services); *Clark v. Washington,* 366 F.2d 678 (CA9, 1966) (state bar association). *But see Forman v. Community Services, Inc.,* 500 F.2d 1246 (CA2, 1974), *rev'd*

on other grds., 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975) (state housing finance agency).

**5.** *See, e. g., United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach, Fla.,* 493 F.2d 799 (CA5, 1974) (county area planning board); *Robinson v. McCorkle,* 462 F.2d 111 (CA3), *cert. denied,* 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492 (1972) (county hospital).

**6.** *See, e. g., Garrett v. City of Hamtramck,* 503 F.2d 1236 (CA6, 1974) (city planning commission); *Hathaway v. Worcester City Hospital,* 475 F.2d 701 (CA1, 1973) (city hospital); *Lehman v. City of Pittsburgh,* 474 F.2d 21 (CA3, 1973) (city civil service commission); *Henschel v. Worcester Police Department,* 445 F.2d 624 (CA1, 1971) (city police department); *Davis v. U. S.,* 439 F.2d 1118 (CA8, 1971) (city department of public welfare); *U. S. ex rel. Gittlemacker v. County of Philadelphia,* 413 F.2d 84 (CA3, 1969), *cert. denied,* 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691 (1970) (city hospital); *U. S. ex rel. Lee v. Illinois,* 343 F.2d 120 (CA7, 1965) (city police department).

**7.** *See, e. g., Jorden v. Metropolitan Utilities District,* 498 F.2d 514 (CA8, 1974) (utilities district providing gas, water and sewer services). *Compare Wright v. Arkansas Activities Ass'n,* 501 F.2d 25 (CA8, 1974), where it was held that "a regulatory agency established and supported by local school systems in the State on a voluntary basis" which "was not created by the Constitution or by any statute of the State of Arkansas" was not immune from a § 1983 action.

*necessary* to its being within that exemption. Entities that do not possess broad governmental powers and functions can, and frequently do, fall within the *Monroe-Kenosha* exemption.[8] In cases involving entities lacking such powers and functions, the deciding factor is not the characteristics of the entity viewed in isolation but rather the purposes and status of the entity revealed by analysis of its relationship to the larger governmental body with which it is connected. The inquiry in such a case becomes whether the public body is so connected—administratively, functionally, fiscally, and in other ways—to a state, city or county that it is not suable under § 1983, not because of its characteristics as an independent entity but because it is in effect an arm or agency of the state, city or county.

This court recently reviewed the rationale of *Monroe-Kenosha* and the legislative history of § 1983 on which those cases are based and concluded that much wider groups of entities than simply municipalities are outside the term "person" and, therefore, are not suable under § 1983. *Adkins v. Duval County School Board,* 511 F.2d 690 (CA5, 1975).[9] In reviewing our prior decisions, we noted that municipalities, counties and states certainly fall within the *Monroe-Kenosha* immunity. Furthermore, since the "state itself [is] obviously not . . . a 'person' . . ., the entities through which the state functions should be excluded." 511 F.2d at 693. Consistent with this analysis, since the City of San Antonio is obviously not a "person," the Board of Trustees of the Pension Fund, as an entity through which that city functions, should be excluded from the term "person."

There is a close connection between the City of San Antonio and the Pension Fund and the Board of Trustees thereof. The Board of Trustees consists of the mayor of San Antonio, two aldermen, councilmen or commissioners of San Antonio, two active San Antonio firemen and two active San Antonio policemen. Vernon's Ann.Civ.St. art. 6243f, § 2. Beginning August 1, 1963, the City of San Antonio was required to pay into the Fund sums of money (varying from $30,000 to $40,000 per month) until "the Board notifies the city that the Fund is actuarially sound." Vernon's Ann.Civ.St. art. 6243f, § 4. The city pays in an amount matching the sums deducted from the salaries of firemen and policemen. Vernon's Ann.Civ.St. art. 6243f, § 4. In addition the city contributes all sums collected from parking meters. Vernon's Ann.Civ.St. art. 6243f, § 16. The city is additionally authorized to contribute money to the Fund from other sources. Vernon's Ann.Civ.St. art. 6243f, § 16. The Treasurer of San Antonio is specifically designated to be the Treasurer of the Fund, collecting all money paid into the Fund and, on the basis of a monthly written list from the Board, paying out benefits. Vernon's Ann.Civ.St. art. 6243f, §§ 5, 6. Any deficiency between the money procured by the Fund and the amount of the pay-

---

8. *See, e. g., Sykes v. California,* 497 F.2d 197 (CA9, 1974) (state department of motor vehicles); *United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach, Fla.,* 493 F.2d 799 (CA5, 1974) (state department of pollution control); *Curtis v. Everette,* 489 F.2d 516 (CA3, 1973), *cert. denied,* 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974) (state bureau of corrections); *Lehman v. City of Pittsburgh,* 474 F.2d 21 (CA3, 1973) (city civil service commission); *U. S. ex rel. Gittlemacker v. County of Philadelphia,* 413 F.2d 84 (CA3, 1969), *cert. denied,* 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691 (1970) (city hospital). For other examples *see* footnotes 3–7, *supra.*

9. *See* Comment, Suing Public Entities Under the Federal Civil Rights Act: Monroe v. Pape Reconsidered, 43 U.Colorado L.Rev. 105, 111 (1971): "[I]t has even been suggested that the holding in *Monroe* should apply only to cities, counties and parishes. However, this attempt to distinguish *Monroe* cannot be rationally supported within the framework of that case. The *Monroe* decision was based on the legislative history of the Civil Rights Act . . . and the reasoning of the Court would require the same result no matter what type of governmental entity was being sued."

ments made out of the Fund is paid by the City of San Antonio. Vernon's Ann. Civ.St. art. 6243f, § 21.

The extent of this administrative, functional and fiscal interrelation compels the conclusion that the Board of Trustees of the Pension Fund is in essence an arm of the city. The non-municipal character of the Board of Trustees, discovered by the majority on this appeal, was neither revealed by nor claimed by the plaintiffs below. To the contrary, plaintiffs in their complaint described the city as the alter ego of the Fund (A. 61, 62). They also alleged that the Pension Fund "operates for the benefit of and *under the direction* of the City of San Antonio." (A. 66) (emphasis added). In the face of the revealed facts and plaintiffs' claims, to view the Board as an independent, non-governmental entity for § 1983 purposes overlooks the interrelationship between Fund and city and does violence to the concept of municipal corporation immunity discussed in *Monroe* and *Kenosha*. This is not to say that every public entity performing some function that a larger and related governmental entity might perform enjoys *Monroe-Kenosha* immunity. Necessarily a body of federal law must develop on a case-by-case basis, and, indeed, that process is already well under way. See footnotes 3–8, *supra.*

The majority describe the function of the Fund as "essentially private," pointing out that what it does could be as well performed by a non-governmental agency such as a bank or an insurance company. This is a dubious distinction at best, since *many functions actually performed by cities*—garbage collection and operation of hospitals, for example—can be, and at times are, contracted out to non-governmental agencies or left to the private sector. The Eighth Circuit has recently declined to "import the often nebulous distinction between the proprietary and governmental functions of a municipal corporation into the fed-

eral law question of its civil liability under § 1983." *Jorden v. Metropolitan Utilities District,* 498 F.2d 514 (CA8, 1974). The term "private" [versus "public"] accomplishes by a semantical device essentially the same importation.

Judge Tuttle relies upon language drawn from a Texas decision.[10] This decision, concerned with Texas constitutional provisions which restrict the types of investments that can be made by the state, counties, cities, towns and other political corporations and subdivisions, involved considerations of state policy and precedent largely unrelated to the question before us. Federal courts must make their own decisions, based upon federal law, of the status of a governmental agency as a "person" under 42 U.S.C. § 1983. Unless we cling to the rudder of the Supreme Court in *Monroe* and *Kenosha,* we will find ourselves lost in a sea of state court decisions concluding that various public entities are or are not "governmental entities" for purposes of some particular state constitutional or statutory provision. State court decisions may guide us in understanding, as a factual matter, the purposes, functions and status of the entity in question. But this court, in resolving the legal issue of *Monroe-Kenosha* immunity, must take direction from the multitudinous body of federal law, cited above,[11] which has addressed this precise question. No state court, however well respected, can override the body of federal law that guides us with respect to § 1983.

Second, I turn to the majority's theory that there is jurisdiction over the individual members of the Board of Trustees with respect to all types of relief sought. I believe there is jurisdiction to grant injunctive and declaratory relief against the Trustees but no more than that.

Obviously the Trustees are "persons" in the sense that they are human beings. But before drawing any conclusions about the Trustees' amenability to suit,

**10.** *Bolen v. Board of Firemen, Policemen & Fire Alarm Operators' Trustees of San Anto-* nio, *Texas,* 308 S.W.2d 904 (Tex.Civ.App., 1957) (Writ Ref.)

**11.** *See* footnotes 3–8, *supra.*

one should consider what is really at stake in this litigation. Upon piercing the veil—indeed there really is no veil—it is easy to perceive what the plaintiffs have in mind. In seeking an accounting, restitution, refunds, damages for wrongful taking, and imposition of a constructive trust, plaintiffs are striking directly for the pocket of the Pension Fund. It is perfectly apparent, for example, that the constructive trust is not sought to be imposed on a fund in the individual pockets and bank accounts of the individual Trustees, but upon the assets of the Pension Fund.[12] The minimum that plaintiffs want in this case is a judgment enforceable against the assets of the Pension Fund through the medium of a judgment naming as judgment debtors the members of the Board of Trustees.[13] This case is quite different from those situations in which plaintiffs have brought damage actions in order to hold officers personally liable for maladministration or abuse of their positions. See, e. g., *Wood v. Strickland,* —— U.S. ——, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Monroe v. Pape,* 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492, 505 (1961). Although a federal court has jurisdiction to hear such claims, none appear to be raised in the complaint before us. The Trustees' presence here is purely nominal.[14]

In *Warner v. Board of Trustees of the Police Pension Fund of the City of New Orleans,* No. 74–2303, a companion case pending before this panel, plaintiffs raised substantive claims like those in the instant case, but they eschewed any charade of "individual liability" of Trustees and met head-on the situation as it really existed. They explicitly stated that they did not desire a judgment against Board members as individuals and had no intent that the Board mem-

ber defendants ever suffer personal liability. Rather, they said, they desired a judgment that would force the Board members to serve as conduits for the processing of claims that would be paid out of the pension fund and from no other source. The District Judge in that case treated the suit as just what it was, one in which the only claim against the trustees in their official capacities was a prayer for a declaration that would have the effect of requiring the Board to make refunds.[15] The instant plaintiffs have made no such affirmative disclaimer, but their target is unmistakable. One need only read the complaint.

I agree with the Eighth Circuit's recent statement that "individuals and associations acting under color of state law are not immune to the sanctions of the Civil Rights Acts and may be sued, *unless it is clear to the court that the claim is actually a ruse by which personal jurisdiction over the state is sought to be exercised.*" *Keckeisen v. Independent School District 612,* 509 F.2d 1062, 1064 (CA8, 1975) (emphasis added). Such a ruse is before us today. The kind of attack on the public fisc that is represented by *Warner* and by this case strikes at the core of what was discussed in *Monroe* and *Moor v. County of Alameda, supra.* Both of those decisions traced the legislative history of the Civil Rights Act and found compelling indications that "Congress did not intend . . . to impose vicarious liability on municipalities for violations of federal civil rights by their employees." *Moor, supra,* 411 U.S. at 710 n.27, 93 S.Ct. at 1797, 36 L.Ed.2d at 610 n.27. Judge Tuttle's opinion trivializes those decisions. Surely *Monroe* and *Moor* represent more than a rule of artful pleading—name the city as defendant and one is barred from ac-

---

12. In fact, that is what the complaint specifically asks.

13. As already pointed out, some of the claimed relief is specifically asked against the Pension Fund itself, and the Fund is described as a "defendant."

14. For example, relief is claimed for a period of time extending back to the 1930's. It is

obvious that there have been numerous predecessor trustees for whose acts the present members of the Board could not be held responsible.

15. The plaintiffs in *Warner* also sought a declaration as to the constitutionality of the statute. There, as here, § 1983 jurisdiction exists to enter such a declaration.

cess to the public treasury; name city officials as defendants and through a judgment against them condemn public funds.

The majority gloss over the far-reaching implications of their action by noting that in *Monroe* "the Court seemed not the least concerned about whether substantial damages against the police officers of the City of Chicago would be paid only out of the pockets of the individual officers or out of appropriations made by the city government, or by their insurers." I agree that in cases where an individual's abuse of his authority is alleged a municipality's decision to indemnify or insure its employees is a question that does not concern us. Such payments could be viewed as part of the consideration a city pays for its officers' services. We would not pay attention to them in passing on the officers' personal liability, just as we would ordinarily not consider whether the official had taken out his own liability insurance policy. In a case like the present one, however, the question of who it is intended ultimately will pay is crucial, because it raises the possibility that a jurisdictional bar Congress intended to erect will be evaded. There is quite a difference between payment by the city that is voluntarily undertaken as a form of compensation, or for other reasons, and involuntary payment by the city that is inherent in the nature of the plaintiffs' claim.

The Supreme Court in *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), was faced with an effort similar to the one undertaken in the present case. In *Edelman* plaintiffs sought, *inter alia,* to obtain welfare benefits wrongfully withheld by the State of Illinois. To escape the state's Eleventh Amendment defense, plaintiffs named individual state officials as defendants. The Supreme Court, quoting from *Rothstein v. Wyman,* 467 F.2d 226 (CA2, 1972), *cert. denied,* 411 U.S. 921, 93 S.Ct. 1552, 36 L.Ed.2d 315 (1973), rejected this:

It is not pretended that these payments are to come from the personal resources of these appellants. Appellees expressly contemplate that they will, rather, involve substantial expenditures from the public funds of the state. . . .

It is one thing to tell the Commissioner of Social Services that he must comply with the federal standards for the future if the state is to have the benefit of federal funds in the programs he administers. It is quite another thing to order the Commissioner to use state funds to make reparation for the past. The latter would appear to us to fall afoul of the Eleventh Amendment if that basic constitutional provision is to be conceived of as having any present force. *Id.,* at 236–237 (footnotes omitted).

415 U.S. at 665, 94 S.Ct. at 1356, 39 L.Ed.2d at 673–674. If the interpretation of § 1983 set forth in *Monroe* and *Moor* "is to be conceived of as having any present force," then the fiction adopted in the present case must be rejected. Since *Edelman* was an Eleventh Amendment case and our present inquiry is statutory, I make no contention that *Edelman* "expands" *Monroe.*[16] What it does do is to remind us that damage suits purporting to be against officers may in reality be suits against the government itself and that, when this is so, courts do not put on blinders to avoid seeing what is apparent.

As Judge Tuttle points out, we and other courts, post-*Kenosha,* have held that § 1983 actions can proceed against individual officers as parties defendant for injunctive relief, despite the fact that the ultimate judgment would "surely be felt by the City." *United Farmworkers of Florida Housing Project, Inc.,* *supra.* See, e. g., *Gresham v. Chambers,* 501 F.2d 687 (CA2, 1974); *Harper v.*

---

**16.** I agree with the majority that neither municipalities nor their officers are wholly immune from suits for damages in federal courts.

The only issue before us is the scope of § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343(3).

*Kloster,* 486 F.2d 1134 (CA4, 1973);[17] *Cason v. City of Jacksonville,* 497 F.2d 949 (CA5, 1973); *Bramlet v. Wilson,* 495 F.2d 714 (CA8, 1974); *Ybarra v. City of Town of Los Altos Hills,* 503 F.2d 250 (CA9, 1974). See also *Edelman v. Jordan, supra,* 415 U.S. at 675, 94 S.Ct. at 1361, 39 L.Ed.2d at 679–80 (dictum). *Kenosha* does not, however, foreclose any and all distinctions between these injunction suits and suits for such monetary relief as pension refunds. In *Kenosha* the Court said:

> We find nothing in the legislative history discussed in *Monroe,* or in the language actually used by Congress, to suggest that the generic word "person" in § 1983 was intended to have a bifurcated application to municipal corporations depending on the nature of the relief sought against them. Since, as the Court held in *Monroe,* "Congress did not undertake to bring municipal corporations within the ambit of" § 1983, . . . they are outside of its ambit for purposes of equitable relief as well as for damages.

412 U.S. at 513, 93 S.Ct. at 2226, 37 L.Ed.2d at 116 (citations omitted). Manifestly, this language, by its terms, merely precludes distinctions based on the relief sought when "municipal corporations" are the defendants. The problem before us is different: when a complaint names a city official as the defendant, what claims for relief should be treated as analytically distinct from claims against the municipality, and what claims should be rejected as subterfuges that contravene the exemption from § 1983 announced in *Monroe?*

It would appear that the courts' willingness to take § 1983 jurisdiction in injunction suits against officers has stemmed from the well-established fiction of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Under that doctrine, a state official who seeks to enforce an unconstitutional act is to that extent "stripped of his official or representative character and is subjected in his person to the consequence of his individual conduct." *Id.* at 160, 28 S.Ct. at 454, 52 L.Ed. at 729. The case stands as a familiar cornerstone of our legal system, and one can readily understand why the courts in § 1983 cases have had no qualms about distinguishing between a city and its officials in the injunction context. See *Ybarra v. City of Town of Los Altos Hills, supra,* at 252–53. At the same time, although these courts have sometimes stated broadly that named city officials may be sued under § 1983, Judge Tuttle points to no decision sustaining an award from municipal funds by means of a suit against municipal officers.[18]

The distinction between an injunction against city officials and one against the

17. Judge Tuttle's reliance on *Harper* is misplaced. In *Harper* the plaintiffs sought declaratory and injunctive relief only. No attempt was made by the plaintiffs in that case to obtain public funds.

18. *Sterzing v. Fort Bend Independent School District,* 496 F.2d 92 (CA5, 1974), involved a § 1983 action by a school teacher to obtain damages and reinstatement after he had been wrongfully discharged from his teaching position in violation of his constitutional rights. The District Court awarded damages but denied reinstatement. On appeal this court held that the District Court had denied reinstatement for improper reasons and therefore the District Court on remand should "fully reconsider" the appropriate remedy. This court further held that the defendant Texas school district, which is "in the nature of a municipality," was immune from suit under *Monroe-Ke-*

*nosha.* The named school officials, however, were found to be proper defendants. Although the per curiam opinion is somewhat ambiguous, the conclusion that jurisdiction is proper as to the named officials may well have referred only to the remedy of reinstatement to be considered on remand. Such equitable non-monetary relief against officials is of course permissible. The citation in *Sterzing,* 496 F.2d at 93, n.2, to *United Farm Workers of Florida Housing Project, supra,* supports jurisdiction only to this extent. Insofar as the decision may permit the award of monetary damages, it would appear that the money would have had to come from the pockets of the individual defendants rather than the school district. The decision expresses no approval of employing the defendant officials as tools to reach into the school district fisc.

city itself is a commonplace and sometimes may have real-life consequences. It may mean, for example, that the relief granted against one official will not bind his successor. See *United Farmworkers of Florida Housing Project, Inc., supra,* at 802 n.3; cf. *Mayor of City of Philadelphia v. Educational Equality League,* 415 U.S. 605, 622, 94 S.Ct. 1323, 1334, 39 L.Ed.2d 630, 646 (1974); *Spomer v. Littleton,* 414 U.S. 514, 94 S.Ct. 685, 38 L.Ed.2d 694 (1974). The line drawn by the majority is not only unprecedented; it is a pleading device and nothing more, inasmuch as the Pension Fund Trustees are nominal defendants from whose personal assets a recovery is not seriously contemplated.

The action against the Board of Trustees of the Pension Fund, as a Board, should be dismissed. The action against the individual members of that Board should be dismissed insofar as it seeks monetary relief. The action against the individual Trustees for declaratory and injunctive relief, however, is maintainable. With respect to that relief, I reach the merits and concur in Part II of Judge Tuttle's opinion.