James A. CROY

v.

Berto H. SKINNER et al.

Civ. A. No. 75–1077.

United States District Court,
N. D. Georgia,
Atlanta Division.

Feb. 12, 1976.

Charles W. Field, Hylton B. Dupree, Jr. & Barry Staples, Marietta, Ga., Bobby Lee Cook, Summerville, Ga., for plaintiff.

John E. Talmadge, Atlanta, Ga., R. P. Campbell, John P. Howell, Covington, Ga., George H. Carley, Decatur, Ga., W. D. Ballard, Covington, Ga., Arthur K. Bolton, Atty. Gen., Ben Kingree, Paul Webb, Jr., Thomas L. Murphy, Atlanta, Ga., for defendants.

## ORDER

RICHARD C. FREEMAN, District Judge.

█ Plaintiff, no stranger to this court,[1] has filed this action for monetary relief as a result of defendants' alleged violation of his constitutional rights. Plaintiff also seeks relief, under theories of pendent jurisdiction, for alleged violation of his state constitutional, statutory, and common law rights. Jurisdiction is predicated upon certain of the civil rights statutes, 42 U.S.C. §§ 1983, 1985 and 28 U.S.C. § 1343, and federal question jurisdiction, 28 U.S.C. § 1331. Defendants are several private individuals and corporate entities, who will hereinafter generally be referred to as the "private defendants", as well as several state law enforcement, prosecutorial, and judicial officials, who will hereinafter generally be referred to as the "state defendants." The action is presently before the court on motions to dismiss filed on behalf of the private defendants and certain of the state defendants and a motion to strike the amended complaint filed on behalf of defendant Odum. Before proceeding to the merits of these various motions, some review of the salient facts appearing of record[2] is warranted.

The instant action is the ultimate result of a series of apparently questionable and arguably fraudulent business transactions between plaintiff and defendant Berto Skinner regarding the

---

1. As noted in documents affixed as exhibits to the complaint, plaintiff has been convicted of several criminal offenses in federal court, including a 1969 conviction in the United States District Court for the Northern District of Georgia for violation of the federal drug laws. *United States v. Croy*, Crim. No. 25099 (N.D.Ga. Aug. 7, 1969). During the pendency of the state court proceedings underlying the instant complaint, plaintiff filed an application for habeas corpus relief, which this court construed as a civil rights action under 42 U.S.C.

§ 1983 and dismissed for failure to state a claim. *See Croy v. Odum*, Civil Action No. 19606 (N.D.Ga. March 8, 1974).

2. Plaintiff has affixed virtually the entire record of the state court proceedings to his complaint, including a transcript of his state court trial and a copy of the slip opinion of the Georgia Court of Appeals reversing his conviction. As a result, these documents are effectively part of the complaint "for all purposes." Rule 10(c), Fed.R.Civ.P.

sale of automobiles. Although the parties have not adequately explained the background facts, apparently plaintiff had engaged in a series of purchases of automobiles from defendant B. Skinner using the sight draft method of payment. As a general rule, it appears that defendant would retain the drafts for a short period of time before presenting them to the bank. In early July, 1973, a similar transaction, involving twenty cars and two sight drafts totaling $34,-625.00, was initiated; however, as alleged by plaintiff, one or both of the sight drafts was presented "prematurely" and dishonored for insufficient funds. Thereafter, defendant B. Skinner swore out two warrants, Nos. 8615 and 8676, dated July 23, 1973, alleging in substance that "[Croy] stated the drafts were good. . . . [but] [t]he drafts were not good." Plaintiff was subsequently arrested and indicted by the Newton County, Georgia, Grand Jury for violation of Ga.Code Ann. § 26–1803(a) (theft by deception). Following a trial before defendant Ridgway conducted in the Superior Court of Newton County, Georgia, on April 11 and 12, 1974, plaintiff was convicted of two counts of theft by deception and sentenced to nineteen years imprisonment. On appeal, this conviction was reversed. *Croy v. State*, 133 Ga.App. 244, 211 S.E.2d 183 (1974).

In reversing the conviction, after reviewing the background facts, the Georgia Court of Appeals stated that the essential element of a violation of Ga.Code Ann. § 26–1803(a) requires a "deceitful representation as to 'an existing fact or past event' . . .." *Croy v. State, supra* at 246, 211 S.E.2d at 185. As a result, the court concluded that the issue on appeal was whether the evidence showed that the defendant created the impression of an "existing false fact." Concluding that a "promise of future performance cannot serve as the basis of a subsection (a) theft by deception prosecution," *id.* at 246, 211 S.E.2d at 185, the Court found that the evidence showed that Croy had promised to cover the drafts when they were presented in the

future and that he had not misrepresented the fact that he had sufficient funds to cover the drafts on their issue date. This conclusion, however, was not reached without some reluctance:

> The district attorney pointed out the flimflam nature of defendant's operations . . .. He also emphasizes defendants' four felony convictions in various Federal courts. We recognize this deplorable state of affairs . .. but our information concerning the accused must not lead us to decide cases except in accordance with applicable legal principles. As was said . . . in *People v. Gitlow*, 234 N.Y. 132, 136 N.E. 317: "Although the defendant may be the worst of men . . . the rights of the best of men are secure only as the rights of the vilest and most abhorrent are protected." This sentiment was echoed . . . in *Grace v. State*, 231 Ga. 113, 128, 200 S.E.2d 248, 258, thusly: "The rights of the best among us are in jeopardy if we fail to protect the rights of the worst among us."

*Id.* at 248, 211 S.E.2d at 186.

In essence, plaintiff alleges that the various defendants in this action conspired to violate his state and federal rights. Plaintiff alleges several statutory and constitutional violations throughout his complaint; however, these allegations vary somewhat depending on the identity of the defendants. In general, plaintiff alleges that the private defendants conspired to falsely accuse him of theft by deception and to procure his false arrest. More specifically, plaintiff alleges that defendants David Skinner and Robert Scott, employees of the defendant C&S National Bank (hereinafter the "Bank" defendants), threatened to ruin plaintiff's personal and business reputation by having him arrested as a result of nonpayment of the sight drafts. Referring to the above-mentioned warrants, plaintiff alleges that "Berto H. Skinner, his brother David and brother in-law [sic] Henry Odum, Jr., embarked upon a conspiracy to maliciously damage the plaintiff by destroying his financial

standing, reputation and family life, copy of said false affidavit . . . is attached hereto . . . ." By amended complaint, plaintiff alleges that defendant David Skinner "injected" himself into the conspiracy by having the sight drafts sent to the Avondale Estates branch of the C&S Bank, rather than the East Point Branch on which they were drawn and conspired with defendant Scott to "prevent" the drafts from going to the East Point Branch.[3] In this amendment, plaintiff alleges that defendant Scott testified at the criminal trial, but failed to collect his witness fee, alleging also that defendant Scott "maliciously and unlawfully" conspired "to cause said Berto H. Skinner unlawfully to swear out warrants against the Plaintiff . . . ." In summation, plaintiff sets forth the following allegations concerning the Bank defendants, as well as certain of the other defendants:

> Plaintiff shows that before October 11, 1973, Defendants Berto H. Skinner, Henry Odum, Jr., David W. Skinner, Robert A. Scott, The Citizens and Southern National Bank, John T. Strauss, District Attorney, and Judge Thomas W. Ridgeway . . . knew that the warrants sworn out by Defendant Berto H. Skinner against Plaintiff which charged Plaintiff with Theft by Deception were false, null and void, and they further knew that said warrant should never have been sworn out . . . because they knew no crime had been committed under the laws of the State of Georgia by Plaintiff and that said Defendants knew further that if Plaintiff was ac-

quitted on said false charges they would be held legally responsible to Plaintiff in a civil action for false arrest and false imprisonment.

Before turning to the allegations of the complaint dealing with the other named defendants,[4] it is appropriate to resolve the question of whether the above allegations state a claim for relief against the Bank defendants cognizable in this court.

## THE BANK DEFENDANTS' MOTION TO DISMISS

In support of their motion to dismiss, the Bank defendants argue generally that they are private citizens, not amenable to suit under federal civil rights and constitutional principles which require the actions complained of to be performed "under color of state law." Arguing that liability of private persons under 42 U.S.C. §§ 1983 and 1985 must be predicated on a conspiracy or concerted action between the private defendants and state officials, *see, e.g., United States v. Price*, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); *Fulton v. Emerson Electric Co.*, 420 F.2d 527, 530 (5th Cir. 1969), defendants state that the factual assertions in the complaint fail to show that D. Skinner and Scott were acting in concert with any state officials. Defendants also contend that conclusory allegations of conspiracy are insufficient to set forth a cause of action, arguing that the naked allegations of the complaint fail to set forth sufficient "highly specific facts" showing that plaintiff is entitled to relief. As a final matter, the defendant C&S Bank argues that it is

---

**3.** The drafts in question were each dated July 5, 1973; however, on review of the endorsements on the back of the drafts, it appears that they were not presented to the East Point Branch for payment until July 18, 1973. Both drafts were returned unpaid, marked "insufficient funds" on July 19, 1973. In light of plaintiff's contentions concerning "premature" endorsement and presentment of the drafts, it is a curious argument indeed to assert that defendants D. Skinner and Scott prejudiced his rights by "preventing" the presentment of the drafts at an even earlier date.

**4.** In essence, the allegations against the state defendants relate to alleged police misconduct consisting of acts of physical punishment and brutality against plaintiff, apparently in an effort to coerce a confession, coupled with purported deprivations of his due process and certain other substantive constitutional rights. Plaintiff's former civil rights complaint, *Croy v. Odum, supra*, was predicated on allegations that the defendant had refused to permit his counsel to visit him in the Newton County, Georgia jail.

not a "person" amenable to suit under the civil rights acts, arguing alternatively that it may not be held vicariously liable for the misconduct of its employees in any event.

■■■ Under the Civil Rights Statutes, the subtle concepts of "state action" or "under color of state law" and the question of who is a "person" amenable to suit are in effect merely different sides of the same coin. No doubt, however, defendants are apparently aware of the seminal opinion of the Supreme Court in *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), ruling that a municipality is not a "person" amenable to suit under 42 U.S.C. § 1983. Thus, without citing any authority, defendants apparently assume that only natural persons are amenable to suit under § 1983. This assumption is wholly incorrect. Although the *Bruno* case has spawned innumerable progeny dealing with the "person" issue, *see, e. g., Adkins v. Duval County School Board*, 511 F.2d 690 (5th Cir. 1975) (School Board is not a "person" under § 1983); *Cason v. City of Jacksonville*, 497 F.2d 949 (5th Cir. 1974) (municipality); *Cheramie v. Tucker*, 493 F.2d 586 (5th Cir.), *cert. denied*, 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 107 (1974), it is clear that each of these cases involved governmental rather than private entities. Thus, the Court of Appeals has recently ruled that the question of whether or not an entity is immune from suit as a "person" under § 1983 depends on whether or not the entity engages in a governmental function as opposed to an "essentially private function." *Muzquiz v. City of San Antonio*, 520 F.2d 993 (5th Cir. 1975) (police and fireman's pension fund board of trustees is subject to suit under § 1983). Even a cursory review of relevant authority would have revealed to movants that the federal courts have long held artificial entities, including corporations, liable or potentially liable for violation of the civil rights laws. *E. g., Adickes v. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Golden v. Biscayne Bay Yacht Club*, 521 F.2d 344 (5th Cir. 1975), *petition for rehearing en banc granted*, 521 F.2d 344 (5th Cir. 1975); *Smith v. Brookshire Brothers, Inc.*, 519 F.2d 93 (5th Cir. 1975); *Fulton v. Emerson Electric Co., supra*. Moreover, jurisdiction in the instant action is also predicated on 28 U.S.C. § 1331, and the technical considerations concerning "persons" amenable to suit under § 1983 are not applicable to lawsuits brought pursuant to § 1331. *See Hander v. San Jacinto Junior College*, 519 F.2d 273 (5th Cir. 1975), *on rehearing*, 522 F.2d 204 (5th Cir. 1975) (per curiam).

■■■ Defendants' argument concerning the nonapplicability of the doctrine of respondeat superior to actions founded on violations of the civil rights statutes shows an equal lack of familiarity with controlling legal principles in this jurisdiction. Certainly, the cases holding corporations potentially liable for violation of the civil rights laws indicate implicitly that concepts of vicarious liability for civil rights violations are equally applicable in the commercial context, assuming of course requisite state action is present. Although other circuits have rejected the applicability of the doctrine of respondeat superior, *e. g., Adams v. Pate*, 445 F.2d 105 (7th Cir. 1971), the law in this circuit is to the contrary:

> It is established law that ["persons"] . . . may under certain circumstances be held vicariously liable for the acts of their subordinates. *Holland v. Connors*, 5 Cir., 1974, 491 F.2d 539; *Parker v. McKeithen*, 5 Cir., 1974, 488 F.2d 553; *cert. denied*, 419 U.S. 838, 95 S.Ct. 67, 42 L.Ed.2d 65 . . . *Tuley v. Heyd*, 5 Cir., 1973, 482 F.2d 590.

*Carter v. Estelle*, 519 F.2d 1136 (5th Cir. 1975). *See also Fallis v. Richardson*, Civil Action No. 74–1269 (N.D.Ga. Jan. 12, 1976); *Scott v. Cribb*, Civil Action No. 74–857 (N.D.Ga. Nov. 13, 1974). As a result, further consideration of defend-

ant's argument in this regard is without merit.[5]

Given the fact that the defendant C&S Bank is thus amenable to suit under 42 U.S.C. §§ 1983 and 1985, as well as 28 U.S.C. § 1331, the question becomes whether the conduct of its employees, defendants B. Skinner and Scott, as set forth in the complaint, shows a sufficient conspiracy or concert of action with state officials to state a claim for relief. The conspiracy aspects of the instant suit are apparently based on 42 U.S.C. § 1985(3), which provides in relevant part as follows:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or in the premises of another, for the purpose of depriving, either directly or indirectly, *any person or class of persons of the equal protection of the laws* . . . if one or more persons engaged therein do, or *cause to be done, any act in further-ance of the object of such conspiracy,* whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages . . . . (emphasis added).

As discussed above, it is evident that the allegations of the complaint attempt to set forth a claim under this section for conspiracy to accuse plaintiff of crime and to "cause" false warrants to be sworn out against him. Although the amended complaint contains an allega-tion that the "defendants", presumably including the Bank defendants, "decided upon" initiating "a course of brutality against Plaintiff",[6] this allegation is not supported by any specific facts showing

---

**5.** Although defendants have overlooked con-trolling principles in this Circuit regarding vi-carious liability in the § 1983 context, they actually may have anticipated a new develop-ment in this area. *See Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561, 44 U.S.L.W. 4095 (1976) (U.S. No. 74–942). In *Rizzo,* the Supreme Court reversed the lower court's equitable decree against the Mayor and Police Commissioner, among others, of the City of Philadelphia. Like many other cases considering such matters, the *Rizzo* opinion was predicated in part on concepts of federal-ism and the "case or controversy" require-ment; however, the opinion also indicates that absent some causal connection between the alleged specific acts of misconduct and the de-fendants, predicated perhaps on "a 'pervasive pattern of intimidation' flowing from a deliber-ate plan by the *named* defendants . . .," *id.* at ——, 96 S.Ct. at 606, 46 L.Ed.2d at 572, 44 U.S.L.W. at 4099 (emphasis in original), state supervisory officials may not be held lia-ble for the misconduct of their subordinates. *See id.* 96 S.Ct. at 604–607, 46 L.Ed.2d at 569–573, 44 U.S.L.W. at 4098–4100. Although this opinion arguably constitutes a clear rejec-tion of any per se liability predicated on the respondeat superior theory, the extent to which the case may be construed as either an implicit or explicit rejection of the Fifth Circuit authority in this area is uncertain. *See id.,* at 4102, n.2 (Blackmun, J., dissenting).

**6.** The pertinent allegations of the amended complaint provide in relevant, albeit confusing part, as follows:

> That they [the defendants] feared . . . a lawsuit [by plaintiff], and knowing the le-gal consequences of their unlawful conduct and activities against Plaintiff, that unless a confession could be obtained from Plaintiff to the false charges against him as contained in said warrants that all of them would be subject to money judgments against them in favor of Plaintiff. Said Defendants knew this, because Plaintiff told Defendants David Skinner and Robert Scott he would sue them and anyone else who had him falsely arrest-ed. Wherefore, *a course of brutality against Plaintiff was decided upon by said Defend-ants,* believing that such violent, inhuman, and brutish assaults upon the body of Plain-tiff would cause him to confess his guilt to said charges, of which he was not guilty. (emphasis added).

These allegations, hardly a paragon of clarity, are stated in a separate paragraph beginning on page five of the amended complaint. The amended complaint itself consists of some sev-en pages of disjointed and rambling narrative, aiding not in the least the court's attempt to understand the merits of plaintiff's complaint. The amended complaint obviously was prepar-ed in utter disregard for the rules of pleading controlling in federal courts. *See* Rules 8(a) and 10(b), Fed.R.Civ.P. Suffice it to say, that the touchstone of those rules is clarity and conciseness, rather than the confusion and am-biguity engendered by the instant complaint and the amendment thereto.

that the Bank defendants acted upon this "decision" in any affirmative, overt manner. Thus, no facts are alleged showing that defendants participated in or "caused" the subsequent allegedly illegal conduct of the state defendants during the period of plaintiff's incarceration, other than by participating in the allegedly "illegal" trial as witnesses.

 There is no dispute that § 1985(3) provides a statutory basis to remedy unconstitutional misconduct by private persons not acting under color of state law when those persons have conspired to deprive a person of his civil rights on account of his race. *E. g.*, *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). The question of whether or not § 1985 is available to remedy fourteenth amendment violations not founded on racial discrimination is open to some debate; however, there can be little doubt that such violations must in any event be the product of some "otherwise class-based invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge, supra* at 102, 91 S.Ct. at 1798, 29 L.Ed.2d at 348. *See Fallis v. Toastmasters International, Inc.*, Civil Action No. 15834 (N.D.Ga. March 7, 1972). In arguing that the instant complaint fails to set forth any facts showing a "class-based" animus on their part, the Bank defendants rely on a case from the Southern District of Georgia; however, in doing so, defendants have relied on inappropriate authority, as the opinion in question has not only been reversed on appeal, it has subsequently been vacated en banc by the United States Court of Appeals for the Fifth Circuit. *See Westberry v. Gilman Paper Co.*, 60 F.R.D. 447 (S.D.Ga.1973), *rev'd,*

507 F.2d 206 (5th Cir.), *vacated en banc,* 507 F.2d 215 (5th Cir. 1975).[7] In vacating the district court opinion and withdrawing the appellate panel decision, the en banc court stated that such action was taken "so that it will spawn no legal precedents." *Id.* at 216.

 Irrespective of the unsettled precedential authority, this court agrees in essence with defendants' legal arguments on this issue; and this court likewise agrees that the instant complaint fails to allege any "class-based" animus on the part of defendants. The only possible allegation arguably related to such a claim consists of a statement, allegedly made by defendant D. Skinner, to the effect that defendant "was sick and tired of Jews taking advantage of honest white people." This one, isolated statement falls far short of showing the type of class based discrimination required under § 1985(3). Moreover, assuming arguendo that the complaint might show racial or class-based animus, an alleged conspiracy to "cause" the swearing out of a false warrant simply does not state a claim cognizable under the Constitution and laws of the United States. *Droppleman v. Horsley*, 372 F.2d 249, 251–252 (10th Cir. 1967). *See Weyandt v. Mason's Stores, Inc.*, 279 F.Supp. 283, 287 (W.D.Pa.1968). Assuming arguendo that private persons actually participating in a false arrest and the unconstitutional conduct incident or subsequent thereto may be held liable under the Civil Rights Acts, *Smith v. Brookshire Brothers, Inc., supra* ; there are no allegations whatsoever of any direct participation by the Bank defendants in the actual arrest of defendant or the alleged acts of police misconduct occurring thereafter. Their indirect threats of ar-

7. The lower court opinion in *Westberry* was reversed on January 22, 1975, almost seven months before the instant motion to dismiss was filed; and the January order was withdrawn and vacated in turn on May 23, 1975. Assuming that the fact of the reversal was not reasonably discoverable by access to research materials on the filing of the motion, the parties should have made the court aware of that fact by the filing of supplemental memoranda. The *Westberry* reversal appeared in *Shepard's Federal Citations* at least as early as the October, 1975 edition; therefore, to the extent that case constituted an essential part of the parties' arguments, supplemental briefs should have been filed accordingly. Instead, defendants' error has been compounded by the filing by plaintiff, as late as November 17, 1975, of supplemental briefs relying on the district court version of the *Westberry* case.

rest and financial ruin are simply too remote from the unconstitutional conduct alleged to render them liable under § 1985(3).

 Of course, the primary element for a cause of action under § 1985 is the existence of a conspiracy to violate federal rights. Moreover, the existence of such a conspiracy, when coupled with state action, is also actionable under § 1983. *Fulton v. Emerson Electric Co., supra.* As noted above, aside from assertion of generally incorrect principles of federal law, defendants' main contention in support of their motion relates to the insufficiency of the allegations of conspiracy. Irrespective of the question of whether plaintiff has alleged any ultimate deprivations of constitutional rights on the part of the Bank defendants, this court agrees that the allegations of the complaint fail to sufficiently set forth overt acts showing a conspiracy among the Bank defendants or a conspiracy between the Bank defendants and state officials to violate plaintiff's federally guaranteed rights. There is no doubt that the standard for judging the sufficiency of a complaint in the face of a motion under Rule 12(b)(6), Fed.R. Civ.P. is quite liberal. It is well settled that "a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would not be entitled to recover under any state of facts which could be proved in support of this claim." *Cook & Nichol, Inc. v. Plimsoll Club*, 451 F.2d 505, 506 (5th Cir. 1971). *See Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Thus, as the Court of Appeals for the Fifth Circuit has recently stated, "it should be clear even to the most astigmatic that we view motions to dismiss for failure to state a claim with disfavor, and that in our opinion they should rarely be granted." *Rios v. Dillman*, 499 F.2d 329, 330 (5th Cir. 1974). These admonitions are particularly apposite in civil rights litigation, where the law is in a continuing state of flux and where the facts in issue are often quite complex. On the other hand, a civil rights complaint should not be used as a harassing tactic by every criminal defendant whose conviction is reversed on technical grounds. In such cases, the court should give close scrutiny to the alleged facts, for a general reluctance to grant Rule 12(b)(6) motions "does not mean . . . that motions to dismiss for failure to state a claim should never be granted." *Rios v. Dillman, supra* at 330.

 In considering the allegations of the instant complaint, this court agrees that even under the liberal federal pleading rules, a complainant under § 1985(3) and/or § 1983 must allege specific facts showing "either the existence or the execution of the claimed conspiracy." *Granville v. Hunt*, 411 F.2d 9, 11 (5th Cir. 1969). Moreover, these facts must show overt acts related to the promotion of the conspiracy, and some link between the alleged conspirators. Pleadings which are "merely conclusional and are completely without factual underpinnings. . . . [are] clearly insufficient." *Id.* Thus,

> although pleadings are given a liberal construction in the federal courts, the Rules contemplate some factual statement in support of the claim. General allegations . . . unsupported by any factual statements have generally been rejected as insufficient." [citation omitted]. "[T]he complaint must do more than merely state vague and conclusionary allegations respecting the existence [and operation] of a conspiracy." [citations omitted].

*Id.* Accord, *Burnett v. Short*, 441 F.2d 405 (5th Cir. 1971); *Powell v. Workmen's Compensation Board*, 327 F.2d 131, 137 (2d Cir. 1964); *Bach v. Scott*, 357 F.Supp. 1125 (N.D.Ill.1973). Applying these standards to the instant complaint, it is clear that the complaint fails to allege a claim for conspiratorial deprivation of civil rights on the part of the Bank defendants.

 The instant complaint is replete with conclusory allegations to the effect that the defendants "conspired"

together to "cause" certain constitutional deprivations. The only link between the two Bank defendants, however, relates to the fact that they both work for the same employer, and both dealt with plaintiff concerning the question of payment of the sight drafts. Isolated threats and accusations, coupled with derogatory references to plaintiff's character and ethnic background simply do not state a claim for conspiratorial action in violation of plaintiff's civil rights. Certainly the fact that defendant Scott may have testified at plaintiff's trial in the exercise of a public duty does not show that he conspired to deprive plaintiff of his constitutional rights. *Droppleman v. Horsley, supra.* Moreover, the fact that the C&S Bank maintains a fund to insure that persons utilizing C&S accounts for the purpose of manipulating fraudulent schemes are prosecuted does not warrant a finding that the Bank should be liable in the instant case. As noted above, the only connection of the defendants with the cause of action in the instant complaint, other than the patently frivolous allegations concerning threats, testimony, and the "prosecutorial" fund, consists of the allegations that defendants "caused" Berto Skinner to swear out a false warrant and "decided upon" a course of brutality against plaintiff. These allegations do not state a claim for violation of any federally protected right, and if they did, the absence of any allegation as to the manner in which the defendants conspired together to cause issuance of the warrant or the acts of brutality precludes a finding that plaintiff has set forth a claim showing a civil rights conspiracy. Such allegations contain merely "bare bones" inferences, are conclusory, and are "totally without any fleshing to show a link between the alleged conspirators." *Granville v. Hunt, supra,* 411 F.2d at 11. As a result, the complaint in the instant action is clearly deficient and fails to set forth a claim for federal relief.

Accordingly, for the reasons hereinabove expressed, the motion to dismiss filed on behalf of defendants D. Skinner, Scott, and the C&S National Bank is hereby GRANTED.

## ACCREDITED SURETY & CASUALTY CO., INC.'S MOTION TO DISMISS

▮▮▮▮ In this motion, defendant Accredited Surety & Casualty Co., Inc. (hereinafter "Accredited") rehashes many of the arguments asserted by the Bank defendants; however, to the extent that they relate to the question of "persons" amenable to suit under §§ 1983 and 1985 or the question of vicarious liability for deprivation of civil rights, these arguments are equally without merit. Similarly, defendants reliance on the *Westberry* case is misplaced; however, defendant is correct in asserting that the instant complaint fails to allege any class based animus on the part of defendant Accredited sufficient to state a claim under § 1985(3). The only allegations concerning defendant Accredited in the instant complaint relate to the issuance of a bail bond by defendant following plaintiff's incarceration. Although defendant cites the case of *Ouzts v. Maryland National Insurance Co.,* 470 F.2d 790 (9th Cir. 1972) with respect to potential liability of a bail bondsman, this case is not relevant since there is no allegation in the instant case that defendant Accredited participated in the arrest of plaintiff. Plaintiff has alleged that his bail was subsequently wrongfully forfeited; however, as pointed out by defendant, this forfeiture was effected pursuant to lawful judicial process because of plaintiff's failure to appear. Lawful actions pursuant to State Court process do not state a claim for federal relief, *Droppleman v. Horsley, supra* ; and, in any event, the instant complaint contains no allegation that defendant Accredited participated in any way in the bond forfeiture. Thus, like the claims against the Bank defendants, the claims of deprivation of federal rights asserted against defendant Accredited are conclusory, vague, and without any factual basis to warrant a finding that defendant should be held liable

for conspiring to deprive plaintiff of his civil rights. *See Jones v. Bales,* 58 F.R.D. 453 (N.D.Ga.1972), *aff'd,* 480 F.2d 805 (5th Cir. 1973) (per curiam).

█ Defendant effectively concedes that it overcharged plaintiff on his bond premium in violation of state law, *see* Ga.Code Ann. § 27–501; however, it is well settled that violations of state law do not state a claim for federal relief under 42 U.S.C. § 1983. *E. g., Shields v. Hopper,* 519 F.2d 1131 (5th Cir. 1975). *See McDowell v. Texas,* 465 F.2d 1342 (5th Cir. 1972) (en banc). Of course, the concept of pendent jurisdiction may provide a viable basis for relief predicated on violation of state law rights; however, in the instant case, pendent jurisdiction must be asserted as to parties as well as claims. The question of pendent party jurisdiction in federal question suits has been characterized as "subtle and complex . . . with far-reaching implications." *Philbrook v. Glodgett,* 421 U.S. 707, 718, 95 S.Ct. 1893, 1901, 44 L.Ed.2d 525, 535 (1975). *See Finch v. Weinberger,* 407 F.Supp. 34 (N.D.Ga. 1975). Nevertheless, the "pendent party" concept has recently been recognized as providing a potentially viable basis for relief against private defendants, even when the underlying federal claim against state or federal defendants is barred by sovereign immunity. *Florida East Coast Railway Co. v. United States,* 519 F.2d 1184 (5th Cir. 1975).

█ Plaintiff in the instant action does not rely on concepts of pendent jurisdiction in opposition to Accredited's motion, perhaps in recognition of the rule that pendent jurisdiction is only appropriate where the "relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case'." *Id.* at 1193. The prerequisites to the assertion of pendent party jurisdiction have been summarized as follows:

█ [T]here [must] be present a claim involving a substantial federal question. . . . [2] [T]he state and federal claims [must] "derive from a common nucleus of operative fact." . . . [3] [T]he two claims must be such that, were it not for their disparate federal and state character, the plaintiff would ordinarily be expected to try them in one proceeding.

*Id.* at 1193 (emphasis added). Plaintiff has not attempted to show, and it is clear, that a possible cause of action for overcharges of bond premiums under state law does not arise out of a "common nucleus of operative fact" relative to alleged police brutality and deprivations of due process alleged in the instant complaint. The bond premium claim is wholly separate and distinct from any other cognizable claim alleged; therefore the exercise of pendent jurisdiction in this case over defendant Accredited would clearly be inappropriate. *Id. See also Outzs v. Maryland National Insurance Co., supra.*

Accordingly, as the complaint fails to state a claim for relief under the civil rights statutes against defendant Accredited and because the exercise of pendent party jurisdiction over Accredited would be inappropriate, defendant Accredited's motion to dismiss is hereby GRANTED.

### BERTO SKINNER'S MOTION TO DISMISS

█ As noted above, defendant B. Skinner was the actual complainant who swore out the warrant against plaintiff resulting in his subsequent arrest, incarceration, indictment and trial for theft by deception. Many of the arguments asserted by defendant in support of his motion are similar, if not identical, to the arguments asserted by the other private defendants. Relying on cases such as *Jones v. Bales, supra,* defendant argues that the complaint alleges no sufficiently specific facts showing a class-based animus behind the purported conspiracy, arguing also that private persons who allegedly conspire with public officials protected by sovereign immunity cannot be held liable under § 1983. *See, e. g., Guedry v. Ford,* 431 F.2d 660, 664 (5th Cir. 1970); *Sykes v. California,*

497 F.2d 197, 202 (9th Cir. 1974); *Hagopian v. Consolidated Equities Corp.,* 397 F.Supp. 934, 936 (N.D.Ga.1975). In sum, defendant B. Skinner argues that if liability were imposed against him in this case, "every victim of a crime who rightfully invokes the aid of his State law and the officers thereof would be potentially subject to being sued in Federal Court for violating the perpetrator's Federal rights."

The above-quoted statement by defendant is remarkably analogous to the view of the dissenting judge in *Smith v. Brookshire Brothers, Inc., supra*:

> The vision of a citizen's hesitating to call for police assistance in fear they may, when they arrive, employ some unconstitutional procedure over which he has no control and thus render him liable in a § 1983 action is not an attractive one.

*Id.* at 97 (Gee, J., dissenting). Of course, this is a dissenting view; and the law in this Circuit is controlled by the majority opinion in the *Brookshire Brothers, Inc.* case. That case indicates that insofar as plaintiff seeks relief against defendant B. Skinner, the instant action should not be resolved by a motion to dismiss. Similarly, although defendant's conspiracy-immunity argument has some merit, the question of whether or not the arresting officers should be protected by sovereign immunity is not a matter that should be resolved by a motion to dismiss. *E. g., Carmack v. Gibson,* 363 F.2d 862 (5th Cir. 1966) (distinguishing between judicial and/or prosecutorial immunity and immunity of police officers).

 As a final matter, defendant B. Skinner in effect concedes that plaintiff has stated a claim against him under "general tort theories", including malicious prosecution and abuse of process, arguing that these claims arising solely under state law do not state a claim for federal relief. While this argument is correct, defendant completely overlooks the applicability of the doctrine of pendent jurisdiction, as discussed above. Claims of false imprisonment are often cited as a proper basis for the exercise of pendent jurisdiction. *E. g., Perry v. Jones,* 506 F.2d 778 (5th Cir. 1975). Claims founded upon false arrest theories, when coupled with theories of pendent party jurisdiction, *Florida East Coast Ry. v. United States, supra,* would arguably also be within the jurisdiction of the federal courts. In any event, this court has concluded that the potential liability of defendant B. Skinner in this action is not a matter which may be resolved by a motion to dismiss. Accordingly, B. Skinner's motion to dismiss is hereby DENIED.

## THE STATE DEFENDANTS' MOTIONS TO DISMISS

### A. The Judge and the Prosecutor

Both defendant Ridgway and defendant Strauss have predicated their motions on principles of judicial and prosecutorial immunity; however, Judge Ridgway's motion has effectively been mooted by a stipulation filed by the parties agreeing to dismiss Judge Ridgway as a party defendant with prejudice. In light of this stipulation, it is hereby ORDERED that defendant Ridgway be dismissed as a party defendant in this action with prejudice.

 The only misconduct alleged against the prosecuting attorney in this case is that he neglected to effectively concede defeat in the state court criminal trial by acquiescing in a motion for a directed verdict of acquittal, and that he caused plaintiff to be brought to court in "chains and manacles." The complaint also contains vague references to an investigation of an escape plot, apparently instigated at the request of defendant Strauss; however, plaintiff does not point out how initiation of such an investigation operated to prejudice him or violate his federally protected rights in any way. Similarly, although plaintiff argues that "[a] quasi-judicial officer who acts outside the scope of his jurisdiction . . . cannot shelter himself from liability by the plea that he is acting under color of office", plaintiff does

not cite any cases ruling that initiation of investigations of escape attempts or plots and the manner of conducting trials should be deemed to be "outside the scope" of a prosecutor's "jurisdiction." This court agrees with defendant Strauss that

> the actions of a district attorney in securing investigative assistance . . . is [sic] clearly within the scope of his duties . . . [and] the tactics and strategy utilized by a district attorney in prosecuting a particular case are at the very core of the prosecutorial function.

Accordingly, as defendant Strauss is protected from liability for misconduct in performing his official functions, *e. g., Guerrero v. Barlow,* 494 F.2d 1190 (5th Cir. 1974); *Guedry v. Ford, supra; Carmack v. Gibson, supra,* defendant Strauss' motion to dismiss is hereby GRANTED. *See generally Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

### B. The Deputy Sheriffs

█ With one exception, the motion to dismiss filed in behalf of the deputy sheriffs is predicated on insufficiency of service rather than failure to state a claim. The exception is the motion filed in behalf of defendant Hunter, who argues that the complaint is deficient as to him since he is not individually named in the body of the complaint as being one of the persons who allegedly violated plaintiff's rights by holding him in jail incommunicado, by inflicting injuries on plaintiff, and by coercing a confession from plaintiff. In opposition, plaintiff points out that all the deputies are named as a class of defendants, arguing, without citing any authority, that "when an allegation is made against all members of a specific class of people it is necessarily made against each and every member of that class, whether or not such individuals are specifically named." Although the court agrees in part with the arguments of both parties, it is clear that the question of whether or not defendant Hunter actually participated in the alleged acts of police brutality and other unlawful acts is an issue that may quite easily, and more appropriately, be resolved by a motion for summary judgment. Further consideration of the matter in the context of a motion to dismiss is not warranted; therefore defendant Hunter's motion to dismiss is hereby DENIED.

█ The motion to dismiss filed on behalf of defendants Kitchens, Allen, Harper and Harris is predicated on affidavits to the effect that they have not been personally served with copies of the complaint and summons in the instant action and that they did not specifically appoint the Sheriff of Newton County, Georgia, or any member of his staff to receive service for them. *See* Rule 12(b)(4), (5), Fed.R.Civ.P. In opposition, and somewhat belatedly,[8] plaintiff states that service was properly perfected in light of Rule 4(d)(1), Fed.R.Civ.P., which provides in relevant part as follows:

> [Service shall be made] [u]pon an individual other than an infant or an in-

---

8. The instant motion was filed on June 27, 1975. Pursuant to Local Court Rule 91.2, plaintiff had ten days following service of the motion in which to file a response in opposition thereto. Instead, plaintiff's counsel took no action whatsoever on this motion, other than petitioning to withdraw as counsel of record. Former counsel were allowed to withdraw by an order entered on September 18, 1975; however, new counsel took no action on the pending motion until October 31, 1975, at which time they procured an ex parte order, subject to objection, allowing them through November 15, 1975, in which to file briefs in opposition to all pending motions. The sub-ject briefs were not even filed within this timeframe; therefore this court agrees that plaintiff has wholly disregarded the mandates of the local court rules in this matter. Arguably, the remedy in such cases is to order the untimely responses to be stricken of record; however, in view of the questionable merit of the response in question, such drastic action is not warranted. In any event, given the parties' own reluctance to thoroughly research the law in the area of civil rights litigation, *see* note 7, *supra,* any supplemental elucidations concerning relevant authority are welcomed by the court as an aid in its decision making process.

competent person, by delivering a copy of the summons and of the complaint to him personally or . . . by delivering a copy of the summons and of the complaint to an *agent authorized by appointment or by law to receive service of process.* (emphasis added). Despite the contrary assertion in movants' affidavits, plaintiff asserts that service was proper in the instant case since the Sheriff of Newton County was properly served as an agent of defendants. In support of this contention, plaintiff relies on a letter from Mr. William F. Hill, Jr., the Deputy U. S. Marshal effecting service, to counsel for plaintiff, in which Mr. Hill states the following:

> On June 9, 1975, complaints in the above-styled case were served on Sheriff Odom. . . .
>
> Sheriff Odom advised me that he would accept service on Wendell W. Kitchens, Clarence L. Allen, Ralph Harper and Samuel N. Norris. I asked the Sheriff at that time if it would be all right to leave the complaints with him and he assured me that there would be no problem. He called, or rather *had his secretary call, three* of the defendants to be served and they assured him that it would be all right. This was done in my presence while I was in the office. (emphasis added).

As a result of this letter, plaintiff requests an evidentiary hearing on the question of whether service was properly perfected in this action.

Although defendants have argued in some detail concerning the effect of plaintiff's noncompliance with certain procedural requirements of the local court rules, defendants have overlooked their own obligation of thoroughly supporting their legal contentions by citations to relevant authority. Defendants have cited cases to the effect that service upon a purported agent is insufficient unless the agent is specifically authorized to accept service, *e. g., Schwarz v. Thomas,* 95 U.S.App.D.C. 365, 222 F.2d 305 (D.C.Cir. 1955); however, the real question in the present circumstances is whether an unsworn letter sufficiently controverts sworn affidavits to the contrary on this issue to require an evidentiary hearing. *See* C. Wright & A. Miller, *Federal Practice and Procedure* § 1353 at 582–83 (1969).[9] Moreover, defendants have not attempted to assert a possibly meritorious argument founded upon the hearsay nature of the letter or the rule that the agent's authority to accept service may not be established by the extrajudicial statements of the agent himself. *See Schwarz v. Thomas, supra* at 368, 222 F.2d at 308. Finally, defendants have not specifically argued that the type of authorization referred to in the letter would not suffice as a sufficiently specific authorization to uphold service on the purported agent. *See United States v. Marple Community Record,* 335 F.Supp. 95, 101 (E.D.Pa. 1971).

In light of the burden of proof in such matters, *see* note 8, *supra* ; and in light of the hearsay nature of the letter from Marshall Hill, this court is

---

**9.** Professors Wright and Miller discuss the burden of proof in this context as follows:

> The party on whose behalf service is made has the burden of establishing its validity. . . . Normally the process server's return will provide a prima facie case as to the facts of service but if defendant introduces uncontroverted affidavits in support of a motion to quash service, the content of those affidavits will be deemed admitted. . . . Of course . . . plaintiff may present counter-affidavits, depositions, or oral testimony, or he may move for a continuance of the hearing on defendant's motion

so that he may conduct discovery on the service's propriety.

*Id.* § 1353 at 583. These comments include the possibility of receiving oral evidence at a hearing; however, under Local Court Rule 91.-3, all motions are decided without a hearing, unless a clear evidentiary conflict is presented which must be resolved. Thus, in this district, the party desiring to uphold service must counter the opposing party's affidavits with concrete, admissible evidence showing the validity of service or that an evidentiary hearing is warranted.

inclined to agree with defendants' position. In any event, the hearsay declarations of the letter are not of sufficient probative value to require an evidentiary hearing, in the face of defendants' sworn affidavits.[10] On the other hand, the fact that service has not been properly perfected under Rule 4(d)(1) does not warrant dismissal of the action; for it is the rule in this circuit that dismissal for failure to perfect service is inappropriate unless it appears that there is no reasonably conceivable means of acquiring jurisdiction over the defendant. *Stanga v. McCormick Shipping Corp.,* 268 F.2d 544 (5th Cir. 1959). In such circumstances, the remedy is to quash service and allow the plaintiff a reasonable opportunity to serve the parties not previously served in accordance with proper procedural mandates. C. Wright & A. Miller, *supra* § 1354.

Accordingly, construing the instant motion as a motion to quash service, that motion is hereby GRANTED, without prejudice to properly serving defendants Kitchens, Allen, Harper, and Harris pursuant to Rule 4, Fed.R.Civ.P., not later than thirty (30) days from the date of this order. If service is not perfected within this timeframe, and unless the time for perfecting service is extended for good cause shown, the Clerk is hereby ORDERED to dismiss Messrs. Kitchens, Allen, Harper, and Harris as party defendants in this action with prejudice. Plaintiff's motion for an evidentiary hearing on the question of the sufficiency of service is hereby DENIED.

## THE MOTION TO STRIKE

The final motion for consideration is a motion brought pursuant to Rule 12(f), Fed.R.Civ.P. in behalf of defendant Odum, Sheriff of Newton County, to strike plaintiff's first amendment to the complaint in its entirety. Defendant argues that the amendment is not "a short and plain statement of plaintiff's alleged claim, but is a long narration of allegations some of which constitute evidentiary matters which are or may not be admissible as evidence. . . ." Defendant cites no authority whatsoever in support of this contention; therefore defendant has not complied with the mandates of Local Court Rule 91.1. As a result, the motion may be appropriately denied forthwith; but it is wholly without merit, in any event.

■ As a general rule and as pointed out by plaintiff, motions to strike are not favored and are infrequently granted. *See, e. g., Moreman v. Georgia Power Co.,* 310 F.Supp. 327 (N.D.Ga.1969); *Great Northern Paper Co. v. Babcock & Wilcox Co.,* 46 F.R.D. 67 (N.D.Ga.1968). Similarly, such motions may not be used to test the evidentiary sufficiency of the pleadings. *See Augustus v. Board of Public Instruction,* 306 F.2d 862 (5th Cir. 1962). Although this court agrees that the amendment is hardly an example of pleading virtuosity and adds little of substance to the merits of the complaint, *see* note 5, *supra,* it is doubtful that inartful pleading, possibly in violation of the letter and spirit of Rule 8, Fed.R.Civ.P., constitutes a proper basis for a motion to strike. Plaintiff's allegations, while vague and conclusory, are not so patently "insufficient . . immaterial, impertinent, or scandalous" as to warrant relief under Rule 12(f). Accordingly, defendant Odum's motion to strike is hereby DENIED.

In sum, this court has GRANTED the motions to dismiss filed on behalf of defendants D. Skinner, Scott, the C&S National Bank, and Accredited Surety & Casualty Co., Inc. on the ground that the vague, conclusory allegations of the complaint fail to set forth sufficient specific facts showing a conspiratorial deprivation of plaintiff's civil and constitutional rights by these private defendants. In light of the closer connection of defendant B. Skinner with plaintiff's arrest and

---

**10.** In fact, review of the contents of the letter indicates that only three of the four movant-defendants were purportedly called regarding service. Similarly, the letter erroneously identifies one of the deputy sheriffs possibly called as Samuel N. Norris.

interrogation following incarceration, and in view of the applicability of the doctrine of pendent jurisdiction, B. Skinner's motion to dismiss has been DENIED. The motion to dismiss on immunity grounds, filed on behalf of defendant Strauss has been GRANTED; however, a similar motion filed by defendant Ridgway has been mooted by a stipulation of the parties. In light of this stipulation, defendant Ridgway has been DISMISSED WITH PREJUDICE as a party defendant in this action. The motion to dismiss filed on behalf of defendant Hunter has been DENIED; and the motion to dismiss filed on behalf of defendants Kitchens, Allen, Harper, and Harris, construed as a motion to quash service, has been GRANTED, without prejudice to perfecting service over these defendants pursuant to the terms set forth hereinabove. The motion to strike filed on behalf of defendant Odum has been DENIED.